JAMES MACKINTOSH *vs.* ELIOT NATIONAL BANK.

Suffolk. November 22, 1877. COLT & LORD, JJ., absent.

A bank, which pays out money on a check, purporting to be signed by a depositor, but the signature on which is in fact forged by his clerk, is not, in the absence of evidence that the clerk had, or was supposed by the bank to have, any authority to sign the depositor's name, exempt from liability to the depositor, by proof that the forgery was committed on a blank form taken from the depositor's check book, which was left lying about in his office during the day ; that it was stamped with a hand stamp, sometimes used on his checks, and which was accessible to any one in the office ; that the clerk was allowed to fill up checks, and was introduced by the depositor to the officers of the bank as the person who was authorized to re‑ ceive money on the depositor's checks.

CONTRACT to recover $1706.87 deposited with the defendant and standing to the credit of Seaman & Co.

At the trial in the Superior Court, before *Putnam,* J., it ap‑ peared in evidence that the plaintiff carried on business under the name of Seaman & Co. ; that three checks for $850, $658.50 and $198.37 respectively, purporting to be signed by Seaman & Co., were paid by the defendant, the signatures of all of which were admitted to be forgeries ; that the defendant contended it was not liable, because it was through the fault of the plaintiff induced to pay the checks ; that the plaintiff had in his employ one Hall, by whom it was agreed that the forgeries were com‑ mitted ; that the check for $850, which was stamped with the hand stamp of the firm, was paid by the defendant to Hall ; and

that the checks for $658.50 and $198.37, the first of which was also stamped with the hand stamp of the firm, were delivered by Hall to Worster & Babson in payment for gold purchased, were indorsed and deposited by them, and paid by the defendant through the clearing-house.

Francis Harrington, the paying teller of the defendant bank, testified that the plaintiff brought Hall to him, and introduced him to him some months before these checks were paid as a proper person to pay money to on the plaintiff's checks, and said that he would do the business at the bank; that, after this introduction, Hall came to the bank with checks of Seaman & Co., and received the money on them; that he paid to Hall the check for $850; that the other two came through the clearing-house, and he paid the money on them; that the two larger checks had stamps on them; that he had very frequently seen a similar impress on the genuine checks; that he had paid checks signed Seaman & Co., and payable to Hall's own order, which Hall had indorsed in his presence, at the time of payment; that Hall had frequently brought in checks, which were filled in with his own handwriting in the body of them; that the check for $850 was presented by Hall as agent of Seaman & Co.; that it was filled in, in the body of it, with the handwriting of Hall; that it bore the stamp of Seaman & Co.; that that had some effect on him in inducing him to pay it, though he should have paid it, without that, on the strength of the introduction; that the check for $658.50 had the indorsement of Worster & Babson, and had the stamp, and those facts had some effect on him in inducing him to pay the check, and the signature to the check appeared all right. On cross-examination Harrington said that the check for $198.37 had not the hand stamp on it, but had the indorsement of Worster & Babson, and that had some effect on him, but he relied on his own judgment as to the signature to the check; that he did not compare it with any other signatures; that he understood that the object of the introduction by the plaintiff was to identify Hall as the proper person to pay the money to, on Seaman & Co.'s checks; and that he was very familiar with the signature of Seaman & Co.

Royal B. Conant, the cashier of the defendant bank, testified that the plaintiff brought Hall into the bank and introduced him

to him; that he said, "This is Mr. Hall, who will hereafter do my banking business; what he does will be all in order, correct, or right, or something to that effect." On cross-examination he stated that he understood that it was an introduction, merely an identification of the party; and that he did not understand, from what the plaintiff said, that Hall was authorized to sign his name as Seaman & Co.

The plaintiff introduced in evidence the report of an auditor in his favor, by which it appeared that Hall filled checks very often and numbered the check book when he filled such checks, and that the check book was lying about in the plaintiff's office during the day, and the hand stamp of the firm was accessible to any one in the office, the hand stamp being very seldom used.

The plaintiff contended that, it being conceded that the signatures on the checks were forged, there was nothing in the evidence to exonerate the defendant from liability. The judge so ruled, directed a verdict for the plaintiff, and, by consent of parties, reported the case for the consideration of this court. If the rulings were correct, judgment was to be entered upon the verdict. If the rulings, or either of them, were incorrect, the verdict was to be set aside, and the case to be returned for a new trial.

*F. Goodwin,* for the defendant.

*D. F. Fitz,* for the plaintiff, was not called upon.

GRAY, C. J. The defendant bank must bear the loss of the amounts which it paid upon the forged checks. There was no evidence tending to show that the plaintiff's clerk had, or was understood by the defendant's officers to have, any authority to sign his name. The plaintiff cannot be held bound by his clerk's unauthorized and criminal acts, upon any ground that would not make every merchant who keeps on his desk in his counting-room for his own use a check book containing blank orms stamped or engraved with his name, and who sometimes directs his clerk to fill them up for himself to sign, responsible for any number and amount of such checks to which the clerk may forge the signature of his employer. The cases cited in argument have been so fully considered in the recent case of *Greenfield Savings Bank* v. *Stowell, ante,* 196, that there is no occasion to discuss them again.     *Judgment on the verdict.*