HENRY V. CUNNINGHAM, trustee, *vs.* LEXINGTON TRUST
COMPANY.

Middlesex.    December 6, 9, 21, 1926. — April 6, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Bank*, Payment from bankrupt's account.    *Bankruptcy*, Trustee's rights.
*Practice, Civil*, Finding by judge, Interrogatories, Appeal, Exceptions.

A bank which, with no lack of good faith and with no knowledge of the
filing of an involuntary petition in bankruptcy against one of its de-
positors or of an application in the bankruptcy court for an appoint-
ment of a receiver of his property, before an adjudication of the de-
positor as a bankrupt, before an appointment of a receiver, and before
the appointment of a trustee in bankruptcy, pays checks drawn against
the bankrupt's account with it, cannot be found liable for the amount
so paid in an action of contract brought by the trustee in bankruptcy
subsequently appointed.

The evidence at the hearing by a judge without a jury of the action above
described was *held* not to require as a matter of law that the judge find
that any officer of the defendant bank had actual or constructive notice
of the bankruptcy proceedings.

An appeal is not the proper way to bring to this court questions of law
relating to alleged errors in an order made by a judge upon a motion
for further answers to interrogatories propounded to a party in an action
at law.

CONTRACT for $11,914.50 "for moneys paid by the plain-
tiff's bankrupt, Charles Ponzi, to the defendant to the plain-
tiff's use, and for interest thereon."    Writ dated January 20,
1921.

In the Superior Court, the action was heard by *Donahue*, J.,
without a jury.    Material evidence is described in the opin-
ion.    Among findings by the judge were the following:

"The treasurer of the defendant trust company, William
R. S. Eaton, was in charge and control of the general business
of the company and on each working day during the period
here involved was at the banking rooms of the company at
Lexington.    He decided matters arising in the conduct of the
business of the defendant except as his decisions were modified
or controlled by the executive committee or board of directors.

Mr. Eaton was the only officer of the bank who had to do with the Ponzi account or with the withdrawals from that account.

"Mr. Eaton knew of Ponzi's operations and his general scheme of returning depositors' money with fifty per cent increase in ninety days and of the newspaper publicity and notoriety which Ponzi's operations had caused in the community. Mr. Eaton was not a regular subscriber to a Boston paper but at times did read one. He testified that his first knowledge as to the filing of a petition in bankruptcy against Ponzi and as to proceedings with reference to a receiver was gained about August 20, 1920. I am asked to find that by reason of newspaper publications and common notoriety he knew of those bankruptcy proceedings in the period between August 9 (when the first of the three withdrawals from Ponzi's account was made) and August 13 (when the second and third checks were paid through the Clearing House). I am unable on the evidence so to find.

"Evidence was introduced subject to the exception of the defendants as to newspapers generally read by the president and directors of the defendant trust company. During the period August 9 to August 13 several of the directors were on vacations out of town for the whole or part of the time, and the president was out of town during the whole of the time and did not have access to the newspapers. I am unable to find as requested that either the president or any of the directors had knowledge of the bankruptcy proceedings in the period August 9 to August 13, inclusive.

"I find there was no lack of good faith on the part of the defendant in the matter of the three withdrawals from the Ponzi account and that it had no knowledge of the filing of the bankruptcy petition or of the application for a receiver until after the period August 9 to August 13.

"I find that the defendant had no pecuniary interest in the three withdrawals from the Ponzi account."

The judge found for the defendant. The plaintiff alleged exceptions.

*E. J. Owens,* for the plaintiff.

*R. P. Clapp,* for the defendant.

CROSBY, J. This is an action of contract in which the plaintiff, as trustee in bankruptcy of Charles Ponzi, seeks to recover from the defendant, with which Ponzi had a deposit account in the sum of $11,793.04, the amount of two checks alleged to have been paid by the defendant after the filing on August 9, 1920, at 1:40 P.M. of an involuntary petition in bankruptcy against Ponzi. On August 12, 1920, an application for receiver was filed and on August 19 receivers were appointed. On October 25, 1920, an adjudication of bankruptcy was entered.

The first check, for $5,000, was received by the defendant by mail on the morning of August 9, 1920. It was drawn on the defendant by Ponzi and sent by the payee, the Hanover Trust Company, to the defendant for payment. On the same date, the defendant's treasurer, one Eaton, drew its own check for $5,000 on the Fourth Atlantic National Bank, payable to the order of the Hanover Trust Company, sent it to that company by mail, and charged the amount thereof against Ponzi's deposit. The check was received by the payee on August 10; it was presented to the Fourth Atlantic National Bank on the morning of the following day and was paid by it and charged against the defendant's deposit account.

The second check, for $6,700, was dated August 11, 1920; it was drawn by Ponzi on the defendant and was presented for payment at its bank by the payee, one Nielsen, about nine o'clock in the morning of August 12. Nielsen was given two checks by the defendant drawn on the Fourth Atlantic National Bank, payable to his order for $1,700 and $5,000 respectively. These checks were presented for payment through the clearing house and were paid by the drawee and by it charged against the defendant's deposit account.

The trial judge made the following and other findings: " . . . there was no lack of good faith on the part of the defendant in the matter of the three withdrawals from the Ponzi account and . . . it had no knowledge of the filing of the bankruptcy petition or of the application for a receiver until after the period August 9 to August 13. . . . the defendant had no pecuniary interest in the three withdrawals

from the Ponzi account." He denied the plaintiff's request for rulings and found for the defendant. The general question presented is, whether the defendant is liable to the trustee for honoring the checks during the interval of time between the filing of the involuntary petition in bankruptcy and the adjudication, and before the appointment of receivers.

Under § 70a of the national bankruptcy act, "The trustee of the estate of a bankrupt, upon his appointment and qualification, . . . shall . . . be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all . . . (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial processes against him . . . ." Apart from the question as to the time when the trustee in bankruptcy generally takes title, the bank with which the alleged bankrupt in involuntary proceedings has an ordinary customer's account may, without liability to the subsequently appointed trustee, pay during the period between the filing of the petition and the adjudication a check drawn against such account by the alleged bankrupt, if payment is made in good faith and without notice of the pendency of the petition or of the appointment of a receiver. It was said in *Cunningham* v. *Commissioner of Banks*, 249 Mass. 401, at page 412: "A bank receiving deposits and paying the checks of its depositors in good faith in the ordinary course of business commonly incurs no liability to anybody under the bankruptcy act." Although the act by its terms vests in the trustee the title to the property as of the date of adjudication, where, as in the case at bar, the defendant bank has paid in good faith checks of a depositor without knowledge of the filing of an involuntary petition in bankruptcy against him, or that receivers have been appointed, and no demand was made for the deposit until after the checks were paid, the trustee subsequently elected cannot recover from the defendant the amounts paid on the checks. *In re Zotti*, 186 Fed. Rep. 84; petition for certiorari denied *sub nom.* *Watson* v. *European American Bank*, 223 U. S. 718.

Generally, an adjudication relates back to the filing of the petition; but that does not make a bank liable for payments made in good faith before the adjudication, upon depositor's checks in the regular course of business without knowledge of the petition or of the appointment of receivers. The effect of holding otherwise "would be that the bank could not protect itself against liability to a trustee in bankruptcy subsequently appointed on account of payments made in good faith and in the regular course of business and in ignorance of the bankruptcy proceedings — except through the impossible course of keeping itself advised, not only daily, but momentarily, of the filing of petitions for adjudication of bankruptcy against its depositors . . . ." *Citizens' Union National Bank* v. *Johnson,* 286 Fed. Rep. 527, 528. The bankrupt is not divested of his property by the filing of a petition. He is still the owner and holder of it in trust, pending the appointment and qualification of the trustee. *Johnson* v. *Collier,* 222 U. S. 538. *Acme Harvester Co.* v. *Beekman Lumber Co.* 222 U. S. 300, 307, 308. *Everett* v. *Judson,* 228 U. S. 474, 479.

It is the contention of the plaintiff that the filing of the petition was a *caveat* to everyone within this Federal jurisdiction; that the defendant had actual knowledge of the filing of the petition prior to the payment of the checks; that if it did not have such actual knowledge it had knowledge of such facts as put it upon inquiry, and it is chargeable with constructive notice of the fact; and he relies upon the decision in *Mueller* v. *Nugent,* 184 U. S. 1, where it was said at page 14: "It is as true of the present law as it was of that of 1867, that the filing of the petition is a *caveat* to all the world, and in effect an attachment and injunction, *Bank* v. *Sherman,* 101 U. S. 403; and on adjudication, title to the bankrupt's property became vested in the trustee, §§ 70, 21e, with actual or constructive possession, and placed in the custody of the bankruptcy court." This statement cannot be construed to mean that the title of the bankrupt vests in the trustee at the time of filing the petition. Such construction would be contrary to the express provisions of the act. The statement in *Mueller* v. *Nugent, supra,* was made with ref-

erence to the particular facts in that case, and is not pertinent to those presented in the case at bar. It is not applicable without qualification or limitation to all cases which may arise. In *In re Zotti, supra,* it was said that the language referred to the property which prior to the filing of the petition could have been transferred, but was never intended to be applied to a bank which had honestly paid checks of a depositor without notice that any petition in bankruptcy had been filed against him. In *In re Mertens,* 75 C. C. A. 548, 553, it was held that "While the filing of a petition in bankruptcy is a *caveat* to all the world, the notice ought not to have the effect of paralyzing all business dealings with the debtor, or to prevent lienors or pledgees from enforcing their contracts. This is its practical effect, if the rights and remedies of all concerned are in suspense, until it can be ascertained whether an adjudication is or is not to follow the commencement of the proceeding." *Frederick* v. *Fidelity Mutual Life Ins. Co.* 256 U. S. 395, 398. *Reed* v. *Mattapan Deposit & Trust Co.* 198 Mass. 306, 314.

The mere filing of a petition in the case at bar cannot be considered as a *caveat* charging the defendant with notice. The finding that the defendant did not have actual knowledge of the filing of the petition before paying the checks is decisive. Even if there were publications in newspapers to the effect that an involuntary petition in bankruptcy had been filed against Ponzi and an application had been made for the appointment of a receiver, and the defendant's treasurer knew of Ponzi's dealings and general scheme of operations, the trial judge finds that his first knowledge of the filing of the petition and proceedings with reference to the receiver was not acquired until after August 13, 1920. The circumstance that these statements were published in newspapers circulated and sold in Lexington did not require a finding that they were read by the officers of the defendant who thereby had knowledge of the bankruptcy proceedings. There was no evidence that any officer of the bank, apart from Eaton, its treasurer, and Aldrich and Brown, who were directors, knew that Ponzi had a deposit account with the defendant, or that any of the defendant's officers, from state-

ments in the newspapers or otherwise, had learned of the bankruptcy proceedings until several days after the checks had been paid. Upon the evidence, all of which is reported, it could not rightly have been ruled that any officer of the bank had actual or constructive notice of the bankruptcy proceedings by reason of such publications. They are not chargeable with knowledge of statements in newspapers they have not read. The relation of a depositor with his bank and the latter's obligation to pay checks of the depositor are such that the trustee in bankruptcy cannot in reason stand so much better than the bankrupt himself as to be able to accomplish the inequitable result of requiring the defendant to pay its obligation a second time in the circumstances here disclosed.

The plaintiff's requests for rulings numbered one to fourteen could not properly have been given. They all raise substantially the same questions of law as are involved in the general finding for the defendant and in the specific finding that the bank had no knowledge of the filing of the bankruptcy petition against Ponzi before the payment of the checks.

Requests fifteen and sixteen are, in effect, that if the checks were paid by the defendant "innocently and in ignorance of the filing of the petition," this was an affirmative defence and the burden of proving it rested upon the defendant. If we assume that this contention is sound, there was no error. The judge found that there was no lack of good faith on the part of the defendant in honoring the checks, and that it had no knowledge of the filing of the petition or the application for a receiver until after August 13. This finding, made upon evidence submitted by the defendant, was, in substance and effect, a finding that the defendant had proved that it acted in good faith and without notice. Even if the plaintiff were entitled to have the judge specifically rule upon the requests, his failure to do so, in view of this finding, could not have been prejudicial to the plaintiff.

The plaintiff also excepted to rulings of the judge, 8b, 8c and 8d. They related to the title to the property of the bankrupt during the period between the filing of the involun-

tary petition and the adjudication; to the jurisdiction of the bankruptcy court to intervene for the protection of the assets; to the relation of the bankrupt to the trustee when appointed; and to the rights of the latter against a bank which is the depository of the bankrupt who made withdrawals after the filing of the petition but before adjudication. These rulings are covered by what already has been said; they were not erroneous.

The appeal from the order denying the plaintiff's motion that the defendant's president be directed to answer interrogatories 5 to 10, both inclusive, and 12, cannot be sustained. Questions of law relating to answers to interrogatories properly may be brought to this court by exceptions. *Brooks* v. *Shaw*, 197 Mass. 376, 378, 379. *Cutter* v. *Cooper*, 234 Mass. 307, 314. Such questions cannot come up by appeal. *Samuel* v. *Page-Storms Drop Forge Co.* 243 Mass. 133, 134. G. L. c. 231, § 96. Without intimating that any error was committed in the rulings, it is enough to say that they all relate to inquiries respecting what newspapers were read by officers of the bank between August 9 and 12, 1920, and to what newspapers the bank subscribed. These interrogatories were immaterial as it did not appear that the officers acquired any knowledge of the bankruptcy proceedings. The appeal should be dismissed.

*Exceptions overruled.*
*Appeal dismissed.*