MARION L. McQUADE, executrix, *vs.* SPRINGFIELD SAFE DEPOSIT AND TRUST COMPANY.

Hampden.    September 22, 1955. — November 9, 1955.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Safe Deposit Box. Agency,* Power of attorney, Scope of authority or employment. *Insanity. Contract,* Safe deposit box. *Negligence,* Safe deposit box. *Conversion. Bank and Banking,* Safe deposit box. *Law or Fact.*

A power of attorney on a form furnished by a bank and signed, dated and acknowledged before a notary by a lessee of a safe deposit box in the bank appointing a named person the lessee's attorney to have access to the box with the right to remove its contents was complete and in a "form . . . approved by" the bank as required by the lessee's contract with it, although the form provided at its foot beneath the notary's certificate for the signature and address of the attorney and the signature of the lessee in certification of the attorney's signature and these were omitted.    [233]

The legal effect of a written power of attorney is a question of law.    [233]

The words "To use bank key," written by a lessee of a safe deposit box in a bank, who was not in possession of a key thereto, beneath his signature on a power of attorney authorizing his sister to have access to the box and to remove its contents, in the circumstances did not

restrict the sister's general authority to obtain access to the box, and, where it appeared that when she presented the power to the bank she had no key and that the bank key alone did not suffice to open the box, the bank was authorized at her request to open it by removing the lock.  [233–234]

Where one was sane when he hired a safe deposit box in a bank under a contract entitling him by power of attorney to authorize another to have access to the box and remove its contents, subsequent mental incompetency of the lessee at a time when he executed such a power of attorney would not make the bank's allowing the attorney access to the box under the power a breach of the contract of hire if the bank had no notice of the lessee's incompetency.  [234–235]

Evidence merely that, when the sister of a lessee of a safe deposit box in a bank presented to officials of the bank a power of attorney executed by the lessee authorizing her to have access to the box and to remove its contents, the officials knew that the lessee was seriously ill in a hospital and that his signature on the power appeared tremulous, would not have warranted a finding that the officials had reasonable cause to make inquiry with respect to the mental competency of the lessee to execute the power before giving his sister access to the box, or, in the absence of evidence that the officials acted otherwise than in good faith and in accordance with the bank's usual practice, a finding of negligence on their part toward the lessee in giving her access.  [235]

Evidence of the circumstances in which property was taken from a safe deposit box in a bank upon access thereto by one having a power of attorney from the lessee of the box to obtain access to the box and to remove its contents did not show that the access was not legitimate nor warrant a finding that the bank had converted the property taken.  [235–236]

CONTRACT OR TORT.   Writ in the Superior Court dated July 28, 1948.

The action was tried before *O'Brien,* J.

*Stuart C. Rand, (G. d'Andelot Belin & Robert H. Doran* with him,) for the defendant.

*Lawrence R. Cohen, (Samuel P. Sears* with him,) for the plaintiff.

WILLIAMS, J.   This is an action by the executrix under the will of Andrew F. McQuade to recover damages for the loss of property deposited and kept by him in a safe deposit box in the bank of the defendant at Springfield.   The declaration was in three counts alleging respectively breach of contract, negligence, and conversion.   There was a general verdict for the plaintiff, and the case is here on the defendant's exceptions to the denial of its requests for rulings, to

the denial of its motion for a directed verdict in its favor, to a portion of the judge's charge, and to the denial of its motion for a new trial. The decedent hired a safe deposit box in the defendant's bank on April 2, 1945, under a written contract stating that the defendant "leases and rents" to Andrew F. McQuade the safe deposit box in its bank numbered 2891. The contract provided that "The Company shall not be responsible for any loss or damage to the contents of any safe unless the lessee or lessees shall establish to the reasonable satisfaction of the Company that such loss or damage did not occur during a period of legitimate access or entry, and unless it shall appear that said loss or damage was not caused, directly or indirectly by the negligence of the lessee or lessees, their attorneys or their agents or legal representatives, or any of them . . . and also unless it shall appear that such loss or damage was directly due to the failure of the Company to exercise customary care and diligence in maintaining in repair or in watching over the vault in which said safe is located." It was further provided that "Any lessee or lessees of a safe may appoint any other person or persons as his or their attorney or attorneys, with respect to said safe, by execution and delivery to the Company of written power of attorney in such form as may be approved by the Company, and thereupon each such attorney shall be entitled to access to said safe and shall have the right to remove the contents, to surrender said safe and to exercise all other powers of said lessee or lessees with respect thereto."

There was evidence that on February 11, 1946, the plaintiff, who was the wife of McQuade, went with him to the safe or box and saw its contents. It then contained $21,800 in cash, government E bonds having a maturity value of $13,525, two insurance policies on the life of McQuade's brother, a certificate of deposit, and two savings bank books, one issued by the Springfield Institution for Savings, and one by the Five Cents Savings Bank. There was on deposit in the former bank $3,600 or $3,700, and in the latter bank $128. On this occasion the McQuades took

from the box cash in the amount of $10,000. Thereafter Mrs. McQuade retained the keys to the box, but did not visit it again until July 23, 1947, her husband having died on the fifteenth of that month. She then examined the contents of the box and found no cash and only three E bonds, having a maturity value of $2,025. The two insurance policies and the bank book of the Springfield Institution for Savings were missing. The records of the defendant introduced by the plaintiff showed that the only person to open the box between February 11, 1946, and July, 1947, was Mrs. Frances C. Holland, the decedent's sister. She had gone to the bank on November 13, 1946, and presented a power of attorney which, it is not disputed, was signed by the decedent. It was on a form provided by the bank and, so far as material, read, "The undersigned, lessee of safe No. 2891 . . . hereby appoints Mrs. Frances Holland, his sister, of West Haven, Connecticut his attorney to have access and entry to said safe, with the right to remove all or any portion of the contents thereof and to exercise all other powers of the undersigned with respect thereto, all at such times, in such manner and for such purposes as said attorney may deem advisable." The power, which the plaintiff put in evidence, appeared to have been signed on November 12 in the presence of one Joseph R. Guarnera, a notary public, and acknowledged before him to be the free act and deed of the lessee. Beneath his signature McQuade had written in longhand "To use bank key." At the foot of the instrument below the certificate of the notary and a heavy printed line was a form for the insertion of the signature and address of the attorney and the signature of the lessee in certification of the attorney's signature. Bank officials, called by the plaintiff, testified that Mrs. Holland had no key to the box and as the key retained by the bank did not in itself suffice to open the box, the bank, at the request of Mrs. Holland, caused the box to be opened by removing the lock.

It is conceded by the plaintiff that the taking of the property, for the loss of which she seeks compensation, oc-

curred at the time Mrs. Holland was given access to the safe on November 13, 1946. The question for decision, therefore, is whether it could be found that the access afforded her was, referring to the language of the contract, not "legitimate." The plaintiff urges that the bank had no right to open the box since the power of attorney did not contain the signature of the attorney certified by the lessee and therefore was incomplete and not in a form approved by the bank. We think that the attorney's signature and its certification were not parts of the power, which was on its face complete. If inserted they would not have changed the terms of the power but would only have served as a means of identifying the person who presented it.

The plaintiff also argues that the words "To use bank key," written in by McQuade after his signature, restricted the authority of the attorney to gain access to the box only by use of the bank key and that the forceful opening of the box was unauthorized. The determination of the legal effect of this written power is for the court. *Smith* v. *Faulkner*, 12 Gray, 251, 255. *Atwood* v. *Boston*, 310 Mass. 70, 75. Williston, Contracts (Rev. ed.) § 616. We must put ourselves in the place of the parties to the instrument and give its words their plain and ordinary meaning in the light of the circumstances and in view of the subject matter. *Aldrich* v. *Bay State Construction Co.* 186 Mass. 489, 491. The rule of construction that a power of attorney must be strictly interpreted does not go to the extent of destroying the purpose of the power. *Malaguti* v. *Rosen*, 262 Mass. 555, 561. *MacDonald* v. *Gough*, 326 Mass. 93, 96–97. See Williston, Contracts (Rev. ed.) § 619. Authority to conduct a transaction includes authority to do acts which are incidental to it, or are reasonably necessary to accomplish it. *Beit Bros. Inc.* v. *Irving Tanning Co.* 315 Mass. 561, 566. Restatement: Agency, § 35. The plain intent of McQuade who was unable to go to the bank in person was to give his sister access to his box in order that she might remove "all or any portion of the contents." The method by which the box should be opened was merely incidental to the accom-

plishment of his main purpose and the words in question are not, we think, to be construed as limiting the general power.

The plaintiff further contends that it could be found that McQuade at the time he executed the power was mentally incompetent to transact business and that the bank knew or on proper inquiry would have learned of such incompetency. There was evidence that McQuade was in the hospital suffering from a serious heart condition and was physically very feeble. Mrs. McQuade visited him almost daily and presented checks for him to sign in connection with their restaurant business. No checks were signed between October 31 and November 19, and she testified that there were times during the early part of November when in her opinion he "didn't understand what he was doing." After January 22, 1947, when he had returned home she heard him say to a nurse that while he was in the hospital he had signed some papers "that he didn't know just what they were or what they were about." The hospital records show that on November 12, the day on which the power was signed, on three occasions he was given a codeine mixture and on two occasions morphine sulphate in doses of one quarter grain and one sixth grain. If this evidence, unsupported as it was by medical testimony, was sufficient to warrant a finding of incompetency, which we do not intimate (see *Farnam* v. *Brooks*, 9 Pick. 212, 220–221; *Mc-Namara* v. *Boston Elevated Railway*, 197 Mass. 383, 388; *Walsh* v. *Fore River Shipbuilding Co.* 230 Mass. 89, 92), there was no evidence that the bank had notice of such incompetency. All that its officials knew was that he was seriously ill in a hospital and that the signature on the power appeared tremulous. In *Reed* v. *Mattapan Deposit & Trust Co.* 198 Mass. 306, 314–315, the administrator of a depositor in the defendant bank sought to recover the amount of a check which had been signed by the intestate when insane and the bank had cashed. The contract between the depositor and the bank by virtue of which the bank agreed on demand to repay to him, or to his order, the amount of the deposit was made when the depositor

was sane. It was held that by the check transaction the parties did not enter into a new contract but that the payment of the check was only a performance of a previous promise of the bank, the court saying, "In the absence of information as to his incapacity, no duty devolved upon the defendant to anticipate the use, or guard against any misuse, to which the intestate might put the money lawfully due and paid to him, and, if in the ordinary course of business, without any knowledge of his lunacy, the company honestly dealt with him, there is no sound legal or moral reason why the plaintiff should be permitted to disaffirm the payment." The *Reed* case was followed in *Leighton* v. *Haverhill Savings Bank*, 227 Mass. 67, where payment was made by a savings bank on the order of an incompetent depositor presented by his agent. In *Wodell* v. *John Hancock Mutual Life Ins. Co.* 320 Mass. 1, 3–5, after full consideration of the authorities, it was held that the doctrine of the *Reed* case "was in the nature of an exception to the general rule that an insane person is not bound by acts which would bind sane persons" and applied to the payment of a life policy by an insurance company. We think that the same principle should govern our decision in the present case. The bank contracted with McQuade while sane to afford access to the box to a person whom he might authorize in the manner provided by the contract. As the power of attorney which was presented by Mrs. Holland complied with the contractual requirements, there was no breach of contract. The charge of negligence is predicated on the facts which already have been stated. There appears nothing to warrant a conclusion that the bank acted otherwise than in good faith and in accordance with its usual practice. It could not be found that it had reasonable cause to make further inquiry as to McQuade's competency before giving Mrs. Holland access, or that in the circumstances it was guilty of negligence in opening the box.[1] It is plain that there was no evidence of

[1] For collection of authorities see 40 A. L. R. 874; 42 A. L. R. 1304; 133 A. L. R. 279; 27 A. L. R. (2d) 530.

conversion by the bank of the property contained in the box. As the defendant was entitled to the allowance of its motion for a directed verdict, there is no occasion to discuss its other exceptions.

*Exceptions sustained.*
*Judgment for the defendant.*