*Southern District*
No. 64
**BERNARD KRASNER**
v.
**MORTON S. BERK**

Argued: July 20, 1973 - Decided: Dec. 26, 1973

*Present:* Murphy, P.J., Rider & Covett, JJ.
Case tried to *Troy, J.* in the Municipal Court
of Brookline, No. 1371 of 1970.

**Covett, J.** This is an action of contract. The
plaintiff's declaration states that on April 29,
1969, the plaintiff and the defendant entered
into a lease as joint lessees with one Lipson

as lessor for certain office space located at 1265 Beacon Street, Brookline, to be used as medical offices. The lease was for the term of three years commencing June 1, 1969, at a term rental of $23,400 payable $650 monthly on the first day of each month in advance. The lease further provided that the lessees were to pay as additional rental an amount equal to fifteen per cent of any increase in the Brookline real estate tax over the year 1969, and a proportionate amount for any part of a year.

The declaration further states that the plaintiff and defendant as joint lessees agreed to pay the rent and tax to the lessor in equal shares; that the defendant made no payment of rent or tax after July, 1970; that the plaintiff paid the lessor the entire rental and tax for the period from August 1, 1970, to May 31, 1972. A copy of the lease is annexed to the declaration.

The declaration further states that the plaintiff and defendant entered into an agreement in writing between them on May 22, 1969, the material portion of which is as follows:

"1. KRASNER and BERK agree that they are each equally liable for the full and faithful performance of the covenants, conditions and terms contained in said lease, and that KRASNER will take care of and assume full responsibility for the suite occupied by him, and BERK will take care

of and assume full responsibility for the suite occupied by him.

2. Each of the parties will promptly pay to the Lessor, when due, fifty per cent (50%) of the rent and fifty per cent (50%) of the taxes.

3. In the event either of the parties moves from the demised premises, or is unable to occupy his suite as a result of disability or for any other reason he or his estate shall be, and remain, liable for his fifty per cent (50%) rent and his fifty per cent (50%) taxes; and further agrees to reimburse the party remaining on the demised premises, any monies paid on his behalf.''

A copy of that agreement is also annexed to the declaration.

The plaintiff seeks to recover the sum of $7,150 as the defendant's share of the rent for the period between August 1, 1970, and May 31, 1972, plus the defendant's share of the tax increase.

The answer of the defendant is a general denial, payment and an allegation that at the time the lease and the agreement were entered into the defendant was of unsound mind and mentally incapable of entering into the same.

The court found for the defendant.

At the trial it was agreed between the parties that the following were the only issues to be determined by the Court:

1. Was the defendant of unsound mind and mentally incapable of entering into the lease and the agreement?

2. If the court finds for the plaintiff, the finding should be in the sum of $7,754.18 which was the defendant's share of the rent and his share of the taxes for the period from August 1, 1970, to the date of the expiration of the lease, May 31, 1972, or if the court rules the plaintiff is not entitled to recovery beyond the date of the writ, November 24, 1970, then the finding should be in the amount of $1,830.50, which is the defendant's share of the rent and taxes to that date.

It was also agreed that the parties signed the lease and the agreement referred to above.

**There was evidence tending to show that** the plaintiff and defendant were physicians practicing in this Commonwealth; that the plaintiff specialized in surgery and the defendant in internal medicine; that since 1964 both occupied a suite of rooms for the practice of their profession and shared the rental expense between them equally; that on April 9, 1964, they entered into a lease of the medical offices in question as joint lessees with their landlord for a period of five years commencing June 1, 1964 at an annual rental of $4,560. payable $380. monthly which lease was to expire May 31, 1969; they shared the rental expenses equally between them, each paying one-half of the monthly rental to the landlord.

They each occupied their individual offices in the suite and shared a common waiting room and employed their own secretaries. A few months prior to the expiration of the term of the lease the plaintiff and defendant were informed by the landlord (one Lipson) that if they desired to remain as tenants the rental of the suite would be $650 monthly and a new lease would be required. The litigants then had numerous discussions between themselves concerning the advisability of remaining or finding other accommodations; that finding no other suitable space, on April 29, 1969 the plaintiff and defendant entered into a lease as joint lessees with one Lipson for the term of three years commencing June 1, 1969 at a term rental of $23,400 payable $650 monthly on the first day of each month in advance. The lease further provided that the lessees were to pay as an additional rental an amount equal to fifteen per cent of any increase in the Brookline real estate tax over the year 1969, and a proportionate amount for any part of a year.

The present parties then entered into further negotiations to secure an indemnification agreement to provide security for either party should one vacate the premises while the lease was in effect. The plaintiff's attorney, William L. Berger, on May 22, 1969 met with the plaintiff and defendant at their offices and presented the indemnification agreement which both signed after reading.

While in the process of signing the agreement, the defendant is alleged to have stated, "That's fair. That's what we agreed upon. That's the way it should be. I've got to reimburse Dr. Krasner and Dr. Krasner has to reimburse me in the event one of us moves."

The plaintiff further testified that during the years 1967, 1968 and 1969 he noticed nothing unusual about the defendant's conduct or behavior; that when the lease and agreement were executed, he had no indication that the defendant was suffering from any mental illness. After receiving an eviction notice in November, 1970, he was informed that the defendant had not paid his share of the rent beginning August 1, 1970; thereupon the plaintiff paid Dr. Berk's share for August, September and October and he paid the entire rent and taxes called for by the lease thereafter to the landlord.

The defendant's wife testified that in 1968 and early 1969, the defendant seemed confused; was forgetful of dates and appointments; that he frequently forgot his car and hitchhiked to his home in Newton from his office in Brookline or even from New Hampshire; that he often got lost in new situations; that he could not use his dictaphone in January, February and March of 1969; that he ran over his medical bag two or three times in the parking lot when he put it down and forgot it; that in late 1968 and 1969, if his watch stopped he would not

know how to fix it; that, when traveling, he had difficulty not only finding his hotel room or his tickets but also in finding the hotel lobby. From November, 1967 until July, 1970 she acted as his secretary and bookkeeper.

On September 15, 1969, the defendant dictated a letter to her to type and send to the landlord; that she did type the letter; the defendant signed it and it was mailed. That letter is as follows:

"Sept. 15, 1969

"Norman Lipson
1870 Beacon St.
Brookline, Mass. 02146
    Re:   1265 Beacon St., Brookline
            Suite 301

"Dear Mr. Lipson:

This is to inform you of the recent problems which we had had at 1265 Beacon Street, 301, Brookline.

This includes leaking radiators, a toilet that keeps running, faucets in a sink which cannot be shut off, no hot water; the walls were never cleaned as promised, and the windows are filthy. The only thing that was done before the raise in rent was the painting of woodwork. There has also been inadequate cleaning service. In addition our main toilet floor has been cracked and broken during the past several months and despite our asking for repairs of the floor in question nothing has been done.

I should like to add that during this same
period of time our rental has been increased
from $190.00 per month to $325.00 per month.
The combination of these several factors makes
our present situation insupportable, and I am
requesting your immediate attention to this
situation.

Very truly yours,

(s)  Morton S. Berk

MORTON S. BERK, M.D.''

The defendant continued to see patients
until April, 1970 and after then most of his
business consisted of Industrial Accident Board
work. In January of 1970, the defendant re-
ceived the following: $811.30 for fees from his
patients for professional services rendered in
1969; $2,705. for treatment of his patients aris-
ing out of legal court action; $4,500. from the
Commonwealth of Massachusetts for a study
he had done; $25. for insurance reports; $390.
in certain tort cases for medical services ren-
dered to his patients, and $776.12 for fees re-
ceived for his services as physician for the
Songo Shoe Company, a family business. The
defendant's total income arising out of his
medical practice in January, 1970, was
$9,207.42. The defendant's total gross income
for 1970 was $40,431.56.

Dr. John F. Sullivan, a specialist in the field
of neurological medicine, testified that the de-
fendant was referred to him on June 5, 1969.
The chief complaint of the 53-year old defen-

dant was intermittent confusion for the past several years with some difficulty in recent memory.

A neurological examination was made and the doctor concluded that the patient may have a "seizured liability which seems to be getting worse in recent years and as of now".

There was some discussion with the patient and his wife about Dr. Berk giving up his practice without a definitive resolution.

The witness saw defendant a second time on November 1, 1969 at the New England Medical Center Hospital. At that time, the discharge diagnosis according to the hospital record was encephalopathy manifested by memory impairment and episodic confusion.

On November 1969, the defendant did poorly on memory tests. Neurological examination was otherwise within normal limits. A neurological test was conducted that showed a verbal IQ of 116 and a performance IQ of 76. Verbal IQ means understanding of the language, words and use of words. Patient's use of words were somewhat above average. However, his performance IQ of 76 was very dangerously low, indicating that he was unable to reason, unable to form proper judgment, and unable to learn new material. The test results suggest that the recent memory loss is in reality a reflection of a more generalized deficiency in higher mental abilities; that the diagnosis was of pre-senile dementia phrased in the terms of

cortical atrophy. In other words, atrophy of the brain substance. This means that patient had a disease in which there was a premature senility of the brain and that at the age of fifty-three, he had such a loss of higher mental abilities it resembled that of very old dementia which had been developing slowly for a matter of years.

Following the number testing, it was the witness's opinion that Dr. Berk should not continue his practice except on a very restricted basis. He would not and could not take care of ill patients. He could take someone for an insurance examination, take blood pressure, give a flu shot and perhaps check reflexes. In his opinion, Dr. Berk could not have continued his practice for any significantly longer time, and in fact, it was the witness's advice that he should give up the practice.

At the close of the evidence, the plaintiff filed fourteen requests for rulings. Plaintiff claims he was aggrieved by the denial of his requests numbered 4, 8, 9, 10 and 11.

Plaintiff's request numbered 4 reads, "As a matter of law, the evidence is insufficient to warrant a finding that at the time the lease and agreement were entered into by the defendant he was of unsound mind and mentally incapable of making these agreements."

In denying this request, the trial judge stated; "Denied. The evidence of Dr. John

F. Sullivan, a qualified neurologist (exceptional qualifications) that the defendant was unable to reason, unable to form proper judgment or learn new material, combined with same testimony from lay witnesses established sufficient evidence."

A request for ruling, predicated upon the sufficiency of evidence to warrant a finding which is decisive of an issue in the case is a proper, pertinent or relevant request for a ruling of law and not a finding of fact. The denial of such request raises a question of law. *Stella* v. *Curtis,* 348 Mass. 458, 461-462 (1964).

The test in cases of this kind is, "was the party whose contract it is sought to avoid in such a state of insanity at the time as to render him incapable of transacting the business. When this fact is established the contract is voidable . . . and it is no defense . . . that the other party acted fairly and without knowledge of his unsoundness or of any circumstances which ought to have put him on inquiry." *Reed* v. *Mattapan Deposit & Trust Co.,* 198 Mass. 306, 314 (1907). If he could not understand the nature and quality of the transaction or grasp its significance, then it was not the act of a person of sound mind. There may be intellectual weakness not amounting to lack of power to comprehend. But an inability to realize the true purport of the matter in hand is

equivalent to mental incapacity. *Sutcliffe* v. *Heatley,* 232 Mass. 233 (1918).

Since every man is presumed to be sane, till the contrary is shown, the burden of proof rests on the party alleging the insanity. *Hix* v. *Whittemore,* 4 Met. 545, 546 (1842), and is bound to sustain his burden by a fair preponderance of the evidence. *Fulton* v. *Umbehend,* 182 Mass. 487 (1902). *Lewis* v. *Russell,* 304 Mass. 41, 43 (1939).

The focal point of the inquiry as to the mental capacity of the defendant is upon the dates of April 29, 1969 and May 22, 1969, the dates upon which the lease and indemnification agreement were executed respectively. See *Lewis* v. *Russell,* 304 Mass. 41, 44 (1939).

The terms of the lease and the agreement are not shown to have been unfavorable or so unusual as to require the conclusion that the defendant, by agreeing to the terms, showed incompetence. *M. DeMatteo Construction Co.* v. *Daggett,* 341 Mass. 252, 261 (1960).

The trial justice was not required to believe the oral evidence of the plaintiff and his witnesses. *Perry* v. *Hanover,* 314 Mass. 167, 170 (1943).

In an action of law, the general and special findings of the justice are to stand if warranted in law upon any possible view of the evidence and may not be reversed unless there is no evidence to sustain them. *Moss* v. *Old Colony Trust Co.,* 246 Mass. 139, 143 (1923).

However, viewing the evidence most favorable to the defendant, we cannot say that the defendant has met the tests stated in *Read* v. *Mattapan Deposit & Trust Co.* and *Sutcliffe* v. *Heatley*. There was no evidence that the defendant did not understand the transaction at the time of the execution of the lease and agreement. Mere mental weakness not amounting to lack of power to comprehend is insufficient to sustain the defendant's burden. See *Meserve* v. *Jordan Marsh Co.,* 340 Mass. 660 (1960) and *Surrender of Minor Children,* 344 Mass. 230 (1961).

It was prejudicial error to deny the plaintiff's request numbered "4", and since the denial of this ruling is decisive of the case, it is unnecessary for us to discuss the other requests in detail.

At the time of trial, the plaintiff had sustained damages in the sum of $7,754.18. The finding for the defendant is vacated and a finding is to be entered for the plaintiff in the sum of $7,754.18.

So ordered.

WILLIAM M. BERGER
   for Plaintiff
HERBERT W. FINBURY
   for Defendant