FANNIE I. LANG *vs.* ANTOINETTE GIRAUDO & another.

Suffolk. October 8, 1941. — February 26, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Fraud. Contract,* Validity, Rescission, Performance and breach. *Deed,* Rescission. *Equity Jurisdiction,* Rescission, Accounting, One seeking equity must do equity. *Equity Pleading and Practice,* Decree, Costs. *Trust,* Constructive.

Facts warranted by reported evidence justified the entry of a decree in equity rescinding a conveyance of property procured to be made, without the plaintiff's receiving from the defendant an agreed purchase money mortgage or any payment of an agreed price, through false and fraudulent representations of fact on the defendant's part as to his financial ability and persuasion of the plaintiff not to investigate nor seek legal advice: such representations were not promissory in character nor matters of opinion or prophecy.

A defendant in a suit in equity was not entitled to maintain a counterclaim based on alleged breaches by the plaintiff of an agreement which the plaintiff was found entitled to rescind for fraud.

A decree in equity granting rescission of a contract for sale and conveyance of real estate from the plaintiff to the defendant was erroneous in also ordering paid out of the defendant's funds certain obligations respecting the property which the defendant had assumed in the contract so rescinded.

The defendant in a suit for rescission of a conveyance of real estate by the plaintiff was entitled to have the plaintiff do equity as a condition

of obtaining relief; and a final decree for rescission was reversed and the suit was remanded to the trial court for an accounting between the parties from the date of the conveyance to the date of the final decree after rescript, in which, unless special circumstances requiring different disposition should appear, the plaintiff would be entitled to charge the defendant as constructive trustee with the profits or fair rental value of the property for the period in which it was held by the defendant, and the defendant would be entitled to credit for payments made by him for taxes, principal and interest on mortgages, instalments due a finance company and necessary repairs so far as they increased the value of the property; but not to credit for expenditures for new additions or improvements.

Costs of an appeal by the defendant from a final decree in equity ordering rescission of a conveyance of real estate from the plaintiff to the defendant were awarded to the plaintiff where this court adjudged that the plaintiff was entitled to the rescission but ordered the decree reversed and the suit remanded to the trial court for an accounting between the parties to which the defendant was entitled as a condition of the plaintiff's securing relief.

BILL IN EQUITY, filed in the Superior Court on August 10, 1940, and afterwards amended.

The suit was heard by *Walsh*, J.

*M. C. Taylor*, for the plaintiff.

*H. S. Avery*, for the defendant Giraudo, submitted a brief.

QUA, J. This is a bill in equity wherein the plaintiff Fannie I. Lang seeks to rescind conveyances made by her to the defendant Antoinette Giraudo, otherwise known as Antoinette G. Monks, of the house and land and furnishings in the house, located at No. 15 Marlborough Street in Boston, on the ground that said plaintiff was induced to convey the property to said defendant by false and fraudulent representations on the part of said defendant.

The bill was dismissed in so far as it concerned a second plaintiff, Sally Dinn, who it appeared had no beneficial interest in the property, and as against two mortgagees, also defendants. A counterclaim against the plaintiffs by the defendant Giraudo was likewise dismissed. Relief was granted to the plaintiff Lang against the defendant Giraudo by ordering her to reconvey the property to Lang, and against the defendant Avery by ordering him to make certain payments on account of the property for the benefit

of the plaintiff Lang out of any funds in his hands belonging to the defendant Giraudo. From the final decree only the defendant Giraudo appeals. In this opinion, unless otherwise indicated, the plaintiff Lang will be called the plaintiff and the defendant Giraudo the defendant.

The evidence is reported and is voluminous. It has been carefully examined, but need not be stated in detail. The plaintiff and the defendant became acquainted in the spring of 1940 and soon became intimate with each other. For a period of several months the defendant continued to represent herself to the plaintiff as a woman of large business experience and great wealth. She spoke of costly furnishings and rugs which she said she had in storage. She stated that she wanted the Marlborough Street house for a home to which she could bring her furniture. These and similar statements seem to have been repeated many times and to have been embellished with circumstantial details calculated to "build up" the defendant in the mind of the plaintiff as a woman of moral and financial responsibility. The substance of many, if not most, of these statements is fairly shown to have been false. The judge justifiably found "that the defendant made many false statements to plaintiff Lang concerning her finances and social standing and recommended herself very highly." She told the plaintiff that she was the widow of one Monks, who had formerly lived in Boston and had been a man of wealth and prominence; that through successful litigation in California she had established herself as the heir of Monks and also as a creditor of his estate to the extent of $150,000 or more; that she had entrusted the defendant Avery, who is a lawyer practicing in Boston, with large sums of money which "went into the millions"; and that this was her money and was subject to her disposal. The fact was that when these statements were made the defendant had been wholly unsuccessful in the California litigation; that the court in California had decided, subject to appeal, that the defendant's purported marriage to Monks was invalid and that she was not his widow; that her alleged claims against his estate had been disallowed; and that these decisions

had not been reversed at the time of the hearing of the present suit. The facts as to her alleged fund in Mr. Avery's hands were that he had only trivial sums belonging to the defendant, probably at no time exceeding $100 and in any event not more than $500.

After some preliminary negotiations, the parties, on May 17, 1940, signed an informal agreement of sale and purchase for an entire price of $25,000, of which $13,500 was to be paid by the assumption by the defendant of two existing mortgages on the real estate, and the balance of $11,500 was to be paid in the form of a third mortgage for that amount from the defendant to the plaintiff, payable in five years, with interest at six per cent. Under date of May 25, 1940, a more formal and detailed agreement was executed upon similar terms but with some changes in the figures because of previous payments on account of the existing mortgages and other items. This agreement provided that the purchaser was to assume and pay the existing encumbrances, but it also provided that the acceptance of a deed and possession by the purchaser should be deemed to be a full discharge and performance of the agreement, with the exception of certain obligations on the part of the plaintiff. A bill of sale of the furniture and furnishings from the plaintiff to the defendant bears the same date. The real estate was finally conveyed by the plaintiff to the defendant by deed dated June 4, 1940, and registered on June 10. This deed is made subject to the first and second mortgages but contains no agreement by the defendant to assume them. Thereafter the defendant took possession of the premises and has remained in possession. In fact no third mortgage was given by the defendant to the plaintiff for the balance of the purchase price over and above the first and second mortgages, and the situation at the time of the hearing was that the defendant had acquired title to and was in possession of the plaintiff's property, for which she had paid nothing. It sufficiently appears that early in the discussion the defendant insisted that the transaction be carried out in a manner to be determined by her, and that both before and after the making of the agreements and the delivery

of the deed she stated repeatedly to the plaintiff that she intended to pay in cash or by a certified check the balance of the purchase price over and above the existing mortgages, notwithstanding that the agreements provided for a third mortgage for the amount of that balance, and that she would get the cash from Mr. Avery. She represented, in substance, that it would not be for her own advantage to pay six per cent interest on a mortgage when she had the money available to pay in cash. She said, as the judge found, "that Avery had sufficient funds, but he was hard to get along with and that he was not to be told of the transaction until after the papers were passed, and that then he would have to accept it as an accomplished fact." The plaintiff suggested that she should have the papers drawn by her attorney, but the defendant stated that that would not be necessary. She said that she herself had had enough legal experience, and that she would have the papers prepared by a stenographer. In fact they were prepared by or under the direction of the defendant's lawyer, Mr. Avery. The plaintiff was not represented by an attorney in the matter, although an attorney who had represented her in other matters had asked her whether she thought it wise not to be represented in this matter.

The judge found that "before and after the proposal and the agreement were signed there were statements made by the defendant Monks [Giraudo], in substance to the effect that she would get the money, or a check from Avery, or that she would pay them in cash, or that the mortgage would only be for a time, until she could arrange to get money from Avery to pay said Lang, and that said Lang assented to such arrangement and these statements were such as to constitute an alteration or modification of the written agreement the parties had entered into; and that before signing the proposal of May 17, 1940, there had been talk about getting money from her attorney, by the said Monks, and carrying out the transaction the way she wanted it, and getting a certified check, and much conversation about the deal thereafter and before signing the agreement of May 25, 1940, along the same lines. I find from all the

conduct of said Monks that there was such fraud or misrepresentation as induced plaintiff Lang to sign these documents, with the expectation on her part, and the assurance on the part of defendant Monks, assented to by said Lang, that the transaction was to be consummated in another way than expressed in the written agreement, namely, a payment in cash of . . . [$10,600] shortly after the papers were signed." The judge ruled that "such promises as were made after signing the proposal and agreement constituted a new agreement, and waiver of the terms of the written document." He further found: "notwithstanding the anxiety of said Lang to sell her property and her experience as a business woman, the caution of her attorney, I find that there were material misrepresentations made by the defendant Monks, which were made with intent to deceive said Lang, and that her conduct during the period of negotiations constituted a fraud on said Lang, and she is entitled to the relief prayed for. While plaintiff's conduct was to a great extent improvident and not such as might be expected by a business woman of her experience, there was such fraud and duplicity practiced by defendant Monks, which was relied on by said Lang, as entitled her to the relief prayed for."

We need not discuss the effect of any change in the written agreements by subsequent oral conversations, since it is plain that the judge in general gave credence to the testimony of the plaintiff and rejected that of the defendant, and his justifiable findings and the reported evidence, taken together, establish that the defendant by false and fraudulent representations insinuated herself into the plaintiff's confidence and then persuaded the plaintiff to sign the agreements which provided for the purchase money mortgage, and then to execute and deliver the deed without getting the mortgage, by false and fraudulent representations upon which the plaintiff relied, to the effect that the defendant had acquired great wealth and had the present ability to command large sums of money in the hands of Mr. Avery, and that by adroit and cunning manipulation the defendant persuaded the plaintiff not to seek advice or

to investigate for herself.  Fraudulent misrepresentations as to the financial ability and standing of a person to whom credit is to be extended may be the basis of an action for damages or of rescission in equity.  *Morse* v. *Shaw*, 124 Mass. 59.  *Andrews* v. *Jackson*, 168 Mass. 266.  *People's Savings Bank of Woonsocket* v. *James*, 178 Mass. 322, 324.  *Gurney* v. *Tenney*, 197 Mass. 457, 465.  *Dexter* v. *Fuller*, 217 Mass. 219.  *Commonwealth* v. *Quinn*, 222 Mass. 504, 513.  *Commonwealth* v. *Anthony*, 306 Mass. 470, 475.  Am. Law Inst. Restatement: Contracts, § 471, Illustration 1; Restitution, § 8.

These misrepresentations were not promissory in character.  Nor were they matters of opinion or prophecy.  They were misrepresentations of fact.  They were material in their bearing upon the desirability from the standpoint of the plaintiff of conveying away her property.  They were knowingly false.  The evidence amply justifies findings that they were made to induce the plaintiff to convey the property, and that the plaintiff relied upon them.

There is nothing in the defendant's contention that the plaintiff does not come into court with clean hands because she joined with the defendant behind Mr. Avery's back in a scheme to force Mr. Avery to violate his trust by putting him in a position where he would be compelled to pay the plaintiff out of money held by him for the defendant.  It must be remembered that the defendant's representations to the plaintiff were that the defendant and not Mr. Avery had the right to control the funds stated by her to be in Mr. Avery's hands.  Moreover, even if control had rested in Mr. Avery, it is obvious that he would not be compelled to pay in breach of any trust.  The plaintiff did not join in any proposed breach of trust.  She was under no obligation to inform Mr. Avery that the defendant was buying real estate.

It follows that the plaintiff is entitled to relief by way of rescission.

The decree rightly dismissed the defendant's counterclaim.  The counterclaim is based wholly upon alleged breaches of her agreements by the plaintiff.  The defend-

ant cannot maintain a claim against the plaintiff for breaches of agreements which the plaintiff is rescinding in their entirety.

But the defendant further contends that she is entitled to be repaid by the plaintiff sums of money which she says she expended for instalments of principal and interest on account of the first and second mortgages, for taxes, for instalments on a contract previously made by the plaintiff with Heating and Plumbing Finance Company which by the terms of the agreement dated May 25 the defendant assumed, and for "substantial repairs and improvements in the property." It does not appear that this contention was made before the trial judge, and no evidence was introduced to prove that the defendant did in fact make such payments. In any event the defendant would not be entitled to full repayment of sums expended without regard either to sums received by her as profits from the property while in her possession or to its rental value for that period of time. Her right is merely to require the plaintiff to do equity on her own part as a condition of obtaining the equitable relief which she seeks by submitting to such an accounting as under the circumstances justice demands. *Thomas* v. *Beals*, 154 Mass. 51, 54, 55. *J. C. Penney Co.* v. *Schulte Real Estate Co. Inc.* 292 Mass. 42, 45, 46.

The final decree did enter upon the subject of the accounting in its paragraph 4 by ordering Mr. Avery to pay out of any funds of the defendant in his hands sums that fell due on the mortgages, on instalments to the finance company, and on taxes, all down to the date of the decree. This part of the decree was wrong in subjecting any funds of the defendant thereafter to the payment of liabilities assumed by her under agreements which the decree itself, in effect, rescinds. This issue is brought here by the defendant's appeal and by her contention before us that she is entitled to credit for payments of the character just described. The error cannot be corrected by simply omitting paragraph 4 from the decree. This would not produce a legally correct result. Moreover, inasmuch as the plaintiff's right to the principal relief which she seeks is conditional upon her sub-

mitting to such an accounting as will insure that the remedy given her does not needlessly penalize the defendant, we think that the decree should be reversed in its entirety as between the plaintiff and the defendant in so far as it relates to the cause of action set forth in the plaintiff's bill against the defendant, but not as to the counterclaim. This necessarily involves also a reversal of the decree in so far as it grants relief against Mr. Avery, since the only relief granted against him consists in requiring him to make payments of moneys of the defendant in his hands. This course will leave the trial court free to deal in a proper manner with the entire matter of the accounting between the parties and to condition the principal relief granted to the plaintiff upon such credits to the defendant, if any, as justice may demand. It does not necessarily mean that the reconveyance of the property to the plaintiff must await the final accounting. The court may enter a separate decree for the reconveyance, making such proper provision as it may see. fit by bond or otherwise to secure reimbursement to the defendant of any sum which may after further hearing be found due to her. See *Cann* v. *Barry*, 293 Mass. 313, 317–318. Or a receiver may be appointed to take possession of the property.

The accounting should include the entire period since the conveyance to the defendant, including the year or more that has elapsed since the decree was entered, and should be brought down to the date of the new final decree in the cause. The plaintiff will be entitled to charge the defendant as a constructive trustee with the profits from the property while it was wrongfully held by the defendant, or at the plaintiff's election with its fair rental value for that time. Am. Law Inst. Restatement: Restitution, § 157, Comment d. In the absence of special circumstances rendering it inequitable the defendant will, in general, be entitled to credit for payments made by her or out of her funds for taxes, principal or interest on mortgages or other liens existing when she took title, instalments due to the finance company, and for necessary repairs to the extent that they increased the value of the property, all in accord-

ance with established principles. In general the defendant will not be entitled to credit for any sums expended for new additions or improvements. It seems impracticable at this time to state the applicable law more minutely. See Am. Law Inst. Restatement: Restitution, § 158. The new final decree will also contain proper provisions for reaching and applying in accordance with one of the prayers of the bill any funds of the defendant Giraudo in the hands of the defendant Avery to the payment of any sum found due from the defendant Giraudo to the plaintiff Lang.

The defendant has been found guilty of obtaining the plaintiff's property through fraud. The trial court rightly ruled that the plaintiff should have substantial relief. The defendant's appeal relates primarily to the issue of fraud. It is obvious that nearly all, if not quite all, of the expense incurred in connection with the appeal arises out of the presentation of that issue. The defendant has prevailed only upon a subsidiary point relating to accounting which, although for special reasons it requires the reversal of the decree, does not affect the genuine merits of the plaintiff's case. The very considerable costs of this appeal should therefore fall upon the defendant.

The result is that the final decree is reversed as between the plaintiff Lang and the defendants Giraudo and Avery, except as to the defendant Giraudo's counterclaim, but is affirmed in so far as affects the counterclaim. The plaintiff Lang is to have the costs of this appeal as against the defendant Giraudo. The final decree of the Superior Court remains in force as to other parties who have not appealed. Further proceedings consistent with this opinion are to be had in the Superior Court.

*Ordered accordingly.*