EDWARD W. BRODIE *vs.* EVA D. EVIRS.

Essex.    April 6, 1943. — May 24, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Undue Influence. Deed*, Validity, Cancellation, Ratification.

A conclusion by a master, not shown to have been based solely on his reported subsidiary findings, that a man, who was eighty years of age and of sound mind but so enfeebled mentally and physically that he did not fully comprehend the significance of his acts and was particularly susceptible to undue influence, was induced by undue influence to give a deed of real estate to his niece contrary to his actual wishes, was not inconsistent with a subsidiary finding that by her suggestion the deed contained a reservation of a life estate to him and a statement that she would care for him.

A conclusion that a grantor of real estate by a deed procured through undue influence of his niece, the grantee, had affirmed the conveyance by remaining at her house, cared for by her, for nearly a month after the conveyance, was not required where it appeared that during that period he still had remained in an enfeebled condition which had made him susceptible to the undue influence, and that after he left her house he was improved in health and at once demanded a reconveyance.

A grantor who was induced to convey real estate to his niece through her undue influence and for no consideration except her agreement, stated in the deed, to support him in the future, was not required, as a condition of procuring a decree for reconveyance, to make compensation for services rendered to him by the niece; an action at law was open to her therefor.

BILL IN EQUITY, filed in the Superior Court on November 19, 1941.

From a final decree, entered by order of *Higgins*, C.J., the defendant appealed.

*F. H. Magison & P. H. Stacy*, for the defendant, submitted a brief.

*W. C. McDonald*, for the plaintiff.

LUMMUS, J. This is a bill to set aside a deed from the plaintiff to the defendant and to obtain a reconveyance. The facts appear in the report of a master. On April 1, 1940, the plaintiff's wife died, and he became the sole owner of the house at 35 Green Street in Haverhill which had been owned by them jointly. The defendant, who lived next door, was a niece of the plaintiff's wife. The parties were very close friends, and the defendant performed valuable services during the last illness of the plaintiff's wife. On May 7, 1941, the plaintiff had a serious accident, breaking several bones. He was taken to the defendant's house, where he remained until July 4, 1941. He was a troublesome patient, and required the constant care of the defendant.

The plaintiff and his wife had always desired that upon the death of the survivor of them the house at 35 Green Street should go to the defendant's son. While the plaintiff was at the defendant's house his brother James tried, to the knowledge of the defendant, to induce the plaintiff to make a will giving the house to the son. But the defendant wished and planned to obtain the house by deed to herself.

After some discussion about the transfer of the house, the plaintiff offered to convey the house to her provided she would agree to care for him during life, to pay the taxes and other expenses, and to let him have the income. The defendant rejected this proposal, and told the plaintiff's brother that the plaintiff must be removed from her house within a week. At this time the plaintiff was more than eighty years old, feeble, in danger of death and conscious of the fact, anxious to remain in the defendant's house, and under great bodily and mental stress.

On June 4, 1941, the defendant telephoned a law office, and caused a deed of the house at 35 Green Street from the

plaintiff to the defendant to be prepared. A conveyancer from the law office came to see the plaintiff on June 6 with the deed. Earlier in the same day the plaintiff had suffered a bad heart attack. The conveyancer read the deed to the plaintiff, who said that he wanted the defendant to have the property when he was dead. The conveyancer explained that the deed conveyed the property presently, to which the plaintiff said "All right." He added that the defendant had been good to him and his wife, and that he ought to reimburse her. Nothing was said about any reservation of a life estate. The plaintiff then executed and acknowledged the deed.

A few minutes afterward the defendant came into the room and asked the plaintiff whether he had reserved a life interest, and whether he did not wish a statement that she would care for him. The plaintiff said that the deed was all right as it was. But after some discussion it was agreed that these changes should be made. The conveyancer took the deed away and made the changes. With the changes the deed was executed and acknowledged by the plaintiff on June 9, 1941, and was subsequently recorded. On July 4, 1941, the plaintiff became somewhat improved in health, and returned to the house at 35 Green Street. A few days later he asked the defendant for a reconveyance, offering to pay her for her services, but she refused.

The master finds that on June 6 and June 9, 1941, when the deed was executed and acknowledged, the plaintiff was not of unsound mind. But he was enfeebled by disease which had a deteriorating effect upon his mind. His mental and physical condition made him particularly susceptible to undue influence. He knew that he was dependent upon the defendant for care, and could turn to no one else. He did not fully comprehend the true significance of his acts. The defendant was not content to have the house pass to her son at the death of the plaintiff, but planned to get the title in her own name presently. Her notice that the plaintiff's brother must remove him within a week was designed to further her plan. Her failure to consult the brother as to the deed in question was part of this plan.

The plaintiff was so enfeebled, physically and mentally, and so dependent upon the defendant, that his resistance was weakened. He was weary of the protracted discussion about the house, and yielded to the plan of the defendant without a complete understanding of what he was doing. The deed disposed of his property contrary to his actual desires. He surrendered to the superior and dominant will of the defendant, and to her undue influence.

The judge entered an interlocutory decree overruling the defendant's exceptions to the master's report and confirming that report, and a final decree declaring the deed to be null and void and ordering a reconveyance. The defendant appealed from the final decree.

Although a part of the master's report is entitled "Summary," there is no statement that the findings therein stated are made solely by inference from subsidiary findings contained in other parts of the report. Under these circumstances the judge below and this court "are bound by the ultimate findings unless the subsidiary facts stated are sufficient in themselves to demonstrate that the ultimate findings could not be justified upon any evidence that the master might have received." *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435. *Bumpus* v. *Church*, 302 Mass. 419, 421. *Potter Press* v. *C. W. Potter, Inc.* 303 Mass. 485, 492. *Zak* v. *Zak*, 305 Mass. 194, 196. *Turner* v. *United Mineral Lands Corp.* 308 Mass. 531, 534.

In our opinion the finding that the defendant herself suggested the reservation of a life interest and an agreement on her part to care for the plaintiff, is not inconsistent with the finding that the defendant planned to obtain the property and exercised undue influence upon the plaintiff in obtaining it. True, the defendant was guilty of no fraud in the ordinary sense. Very likely she believed that she had earned the conveyance, and was willing to do what she considered just. Nevertheless she cannot hold property obtained by her undue influence. Undue influence is alleged in the bill, and relief can be given on that ground although the bill also charges fraud which was not proved. *Kidder* v. *Greenman*, 283 Mass. 601, 611–613. *Boudrot* v. *Cole*, 285 Mass. 353,

356.　Although the plaintiff was not of unsound mind, his weakened mental condition is an important factor in determining whether advantage was taken of him by undue influence. *Adams* v. *Whitmore*, 245 Mass. 65, 68.

A conclusion was not required that the plaintiff affirmed the conveyance. Within a month after the deed the plaintiff left the defendant's house and asked her for a reconveyance. It is true that he once stated that he had transferred his property to the defendant and thought she would take care of him and do the right thing. But this statement was made shortly after the deed and while he was still in a feeble condition. There is nothing to show that his condition improved while he lived at the defendant's house. The only finding as to this is that on July 4, 1941, he left the defendant's house "somewhat improved in health." There is no finding that at any time before the disaffirmance the plaintiff was free from the influences which had caused the deed to be made. *Montgomery* v. *Pickering*, 116 Mass. 227, 230, 231.

The plaintiff was not bound to make compensation for benefits received, as a condition of obtaining a decree. He had received nothing as the consideration for his deed, except an agreement to support him in the future "in so far as the same may be necessary after . . . [his] own resources shall be exhausted." *Mullen* v. *Old Colony Railroad*, 127 Mass. 86. *Drohan* v. *Lake Shore & Michigan Southern Railway*, 162 Mass. 435, 437, 438. If the defendant has any claim against the plaintiff for services rendered to him or his deceased wife, an action at law is open to her.

*Decree affirmed with costs.*