DELIA M. CORRIGAN *vs.* ELIZABETH A. O'BRIEN, individually and as executrix and trustee, & others.

Suffolk. November 6, 1967. — December 4, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Trust,* What constitutes, Of personal property. *Gift. Deed,* Consideration, Validity. *Undue Influence. Equity Pleading and Practice,* Master: conclusions.

Where a master's report sets forth all the subsidiary findings on which he bases a conclusion, it is the duty of the trial court, and of this court, to draw its own inferences from those findings. [345–346]

Subsidiary findings by a master required conclusions that by a transfer of a savings bank account by its owner into the names of himself or his wife, "Joint Trustees, payable to either or to the surviving trustee for the benefit of" his daughter, followed by symbolic delivery of the

---

bank book by him to his daughter, a valid trust was created in which his daughter had a beneficial interest; and that a subsequent transfer, after his death, into a joint account of the widow and the daughter was not invalid in that the widow did not understand its significance or was "overreached." [346]

Subsidiary findings by a master required conclusions that a conveyance of a two family house from a widow and her stepdaughter as joint tenants to the widow for life and all her stepchildren as remaindermen, with provisions in the deed giving the widow the right to occupy one of the apartments for her life "free of all rents" and obligating the remaindermen to pay all the expenses of the property not paid by the rent of the other apartment, was for consideration, accomplished the widow's desire to remain in the house, where she and her husband had lived, was not invalid in that she did not understand it or was "overreached" or was subjected to undue influence, and could not be successfully attacked by her. [348, 349–350]

PETITION in equity filed in the Probate Court for the county of Suffolk on February 18, 1966.

The suit was heard by *Keville*, J., on a master's report.

*Timothy J. McInerney* (*James P. Kiernan* with him) for the petitioner.

*Jules E. Angoff* for the respondent Elizabeth A. O'Brien.

*Lewis L. Wadsworth, Jr.* (*Ronald F. Kehoe* with him) for the respondents John J. Corrigan & others.

SPIEGEL, J. This is a suit in equity brought in the Probate Court to determine the title to certain bank accounts and real estate. The petitioner is Delia M. Corrigan, the second wife and widow of the late Peter J. Corrigan, who died December 19, 1963. The respondents are the four children of Peter J. Corrigan by a former marriage. One of them, Elizabeth A. O'Brien, was also made a respondent in her capacity as executrix and trustee under her father's will. The suit was referred to a master. The master made extensive subsidiary findings, from which he concluded, inter alia, (1) in regard to a trust account, denominated Account "Q" in his report, that the decedent did not in his lifetime intend to give the respondent Elizabeth A. O'Brien "a present interest" in the account; (2) that the petitioner, in transferring this account to a joint account payable either to herself or Elizabeth A. O'Brien, did not understand the significance of the trans-

action, was "overreached," and should be restored to her prior legal position; (3) that the petitioner's conveyance of a house which she and Elizabeth A. O'Brien held, after Peter J. Corrigan's death, as joint tenants, to herself for life with a remainder in the four respondents, was a nullity by reason of the petitioner's incapacity and lack of understanding, was made without consideration, and that the petitioner was "overreached" and should be restored to her prior title; and (4) that in view of this last conclusion, Elizabeth A. O'Brien should likewise be restored to her prior title in the house. The respondents filed objections to these conclusions in the master's report. The judge entered an interlocutory decree confirming the master's report with the following modifications: The conclusion under (1) above was inconsistent with the master's subsidiary findings and plainly wrong; those under numbers (2) and (3) were not warranted by the subsidiary findings and plainly wrong; and No. (4) was beyond the scope of the petition and also unwarranted. No appeal was taken from the interlocutory decree. A final decree was then entered, confirming the present state of the title to both the trust account proceeds and the house. From this decree the petitioner appeals. Elizabeth A. O'Brien appeals from the final decree "*only* in the event that this Court should uphold the . . . [master's] conclusion relating to the real estate."

We first deal with the trust account. The master found that Account "Q" was established by Peter J. Corrigan and "was in the names of Peter J. Corrigan or Delia M. Corrigan, Joint Trustees, payable to either or to the surviving trustee for the benefit of Elizabeth A. O'Brien." On March 5, 1964, after the death of Peter J. Corrigan, this account was transferred, under the signature of the petitioner, "into a joint account in the names of Delia M. Corrigan or Elizabeth A. O'Brien, 'payable to either or the survivor . . ..'" In her petition the petitioner alleged that "said trust account and the traceable proceeds thereof, belong to the petitioner as trustee."

We summarize the master's subsidiary findings in regard to Account "Q." The account was opened by Peter J. Corrigan in 1924. In 1949, when there was $332.54 in the account, he transferred it to a joint account in his name and that of the petitioner. Subsequently, both he and the petitioner made withdrawals. In 1957, when there was $7,000 in the account, Peter J. Corrigan transformed it to a trust account as described above. At the time of his death there was $7,000 in the account. All of the dividends had been paid to Peter J. Corrigan. Since the account was changed to a joint account in the names of Delia M. Corrigan and her stepdaughter Elizabeth A. O'Brien, the dividends have gone to the petitioner pursuant to a dividend order signed by Elizabeth A. O'Brien.

In 1958, Peter J. Corrigan handed the bankbook to Elizabeth A. O'Brien and said, "Look what I have done for you." Elizabeth said, "Thank you." "Peter gestured to her for the return of the book by putting his hand out and Elizabeth gave the book back to him." He kept it in his safe deposit box thereafter. In 1963, "Peter told Delia that this account was 'for sickness or anything that you have to use extra for' and if there was anything left Elizabeth was to have it. To which Delia replied that this was nice."

From these subsidiary findings, the master made the following conclusions: "that in exposing or handing this book to Elizabeth, Peter did not intend to give her a present interest in this account; . . . that Peter could not by delivering this book to Elizabeth change the rights of Delia to take this account as surviving trustee; . . . that Peter had no intention of depriving Delia of her right to succeed him as Trustee, but on the contrary he wanted Delia to have the same powers and rights as Trustee on this account which he (Peter) himself had and such powers and rights were to continue during the lifetime of Delia; . . . that in handing this book to Elizabeth in 1958, the most Peter intended to give Elizabeth (if anything) was a right to the proceeds of this account contingent upon the rights of Delia as Trustee. Or, to indicate to Elizabeth what her rights

would be in the account in the event that Delia predeceased Peter. These findings of conclusions of fact are based pretty heavily on the proposition that Peter was completely familiar with joint accounts; that he deliberately had this account set up in a manner different from his other accounts; that if he had not intended Delia to succeed him as Trustee he would have made some other and different arrangements. In other words, Peter is presumed to have intended to do what he actually did. Hence it follows that . . . after Peter's death Delia M. Corrigan was entitled to this trust account and the traceable proceeds thereof as trustee; . . . that although Elizabeth may have intended to be kindly on March 5, 1964, when she (Elizabeth) persuaded Delia to sign a withdrawal slip on this account . . . Delia was not fully informed or aware of what she (Delia) was doing or what her legal rights may have been; . . . that because Delia did not understand the significance of this transaction on March 5, 1964, she was overreached and she should be restored to the legal position which she had on this account prior to March 5, 1964."

In addition to the subsidiary findings the master appended to his report a summary of the evidence upon which he based his conclusions "on the so-called trust account."

The judge rejected these conclusions of the master as "not consistent with his subsidiary findings and . . . plainly wrong," and as "not warranted by his subsidiary findings and . . . plainly wrong." The petitioner argues that this was error. She contends that in the absence of a full report of the evidence, the ultimate findings "must be accepted as true and must be the basis of the final decree, unless on their face they are inconsistent or incomplete as to the essential issues." She asserts that the judge "is not at liberty to substitute . . . [his] own finding for that of the master where the finding of the master is not inconsistent or plainly wrong," and that here "this inference or finding by the master was permissible from his other subsidiary findings and was not inconsistent therewith." These general propositions are correct in the abstract. However,

where the master in his report sets forth all of the subsidiary findings upon which he bases an ultimate conclusion, it is the duty of the trial court, and of this court, to draw its own inferences from those findings. *McOuatt* v. *McOuatt,* 320 Mass. 410, 411. *Samia* v. *Central Oil Co. of Worcester,* 339 Mass. 101, 122. Thus it was open to the judge, as it is to this court, to reach its own conclusions.

The master found that the symbolic delivery of the bankbook by Peter to Elizabeth "could not . . . change the rights of Delia to take this account as surviving trustee" or give Elizabeth a present interest in it. This is plainly wrong as a matter of law. Symbolic delivery of this sort may indeed be effective. *Mikshis* v. *Palionis,* 345 Mass. 316, 318, 319, and cases cited. See also Newhall, Settlement of Estates (4th ed.) § 80, at pp. 246–247. Further, the master found that Delia should take "as surviving trustee." The necessary conclusion from this finding should have been that a valid trust was created in which Elizabeth had a beneficial interest.

We also believe that the judge was right in eliminating the conclusion of the master that Delia "did not understand the significance of . . . [the] transaction" in the establishment on March 5, 1964, of the joint account payable to the petitioner or Elizabeth, or the survivor, and that the petitioner was "overreached." We are of opinion that the subsidiary facts did not support the master's conclusion.

The next matter in dispute is the title to a house at 68 Orchard Hill Road, Forest Hills, which was the family home of the decedent and the petitioner, and the childhood home of the respondents. The master found that the house was a two-family house built by the decedent in 1929, and that he and Delia M. Corrigan occupied the second floor from that time until his death in 1963. They held title to the house until 1957, when Elizabeth was made a joint tenant. On April 18, 1964, title was transferred, through a straw, to Delia M. Corrigan for life with the remainder in the four respondents as tenants in common. "Near the end of this deed are written the following words: 'It is

hereby agreed between the grantor and the grantees herein that the said Delia M. Corrigan shall have the right to occupy the apartment which she is now occupying on the premises free of all rents during her lifetime. It is further agreed between the grantor and the grantees herein that the rental income from the second apartment and the garages on said premises shall be applied towards the yearly real estate taxes, sewer and water charges, insurance and all necessary repairs and should said rental income be insufficient to pay the aforementioned expenses, it shall become the obligation of the said remaindermen . . . to pay the difference, equally.'"

The petitioner alleges that when making this conveyance "she was unable to think objectively due to her grief over the loss of her husband," and that the respondents "jointly and severally by the exercise of undue influence, control and fraud, induced her" to make the conveyance, for which there was no consideration. Consequently she asks that the conveyance be rescinded and that the respondents be made to reconvey the house to her and to Elizabeth as joint tenants. The master concluded that "Delia M. Corrigan did not understand the transaction involving this real estate in which she joined in the conveyance on April 18, 1964. . . . [I]t would have been beyond the capacity of Delia M. Corrigan on April 18, 1964, to understand a complicated real estate transaction such as took place. . . . [I]t would be equitable for the petitioner . . . to be restored to the same title in this real estate that she had before the conveyance." He also found that there had been no consideration for the conveyance.

The interlocutory decree stated that these conclusions "are not warranted by the subsidiary findings of the Master and are plainly wrong." The final decree confirmed the present state of the title to the real estate. What we have said earlier about the judge's duty to draw his own inferences applies equally well here. The master's conclusion that there was no consideration for the conveyance was inconsistent with his subsidiary findings and plainly wrong.

Before this conveyance, Delia and Elizabeth were joint tenants in the house. The master found Delia's chief motivation during this transaction to be the fear of "being put out of that house." He found that "This was due to her age and the loss of her husband and presumably a general lack of confidence on her part." But this fear seems to have had some foundation in fact, namely the legal possibility that Elizabeth by a petition for partition under G. L. c. 241, § 1, could compel the sale of the house and the division of the proceeds. Such an eventuality might indeed have put the petitioner "out of that house." The life estate which the petitioner acquired as a result of the conveyance removed this possibility. It was clearly consideration for the undivided interest in fee which the petitioner surrendered. That undivided interest could have amounted to more than a life estate to the petitioner only if she herself had sought partition, which presumably she did not intend to do. Had she remained a joint tenant until her eventual demise, title to the house would pass to Elizabeth by right of survivorship. To be valid, consideration need not be of a value equivalent to the value surrendered. *M. E. Hall Co.* v. *Gale*, 248 Mass. 299, 302. *Dondis* v. *Lash*, 277 Mass. 477, 486. In the instant case it is difficult to evaluate the relative worth to the petitioner of the two estates exchanged, considering her desire to remain in the house.

The assumption by the remaindermen of all the costs of upkeep, in so far as the rent of the first floor apartment should prove insufficient, is a further item showing consideration. There was testimony that the rent is not sufficient to cover the costs of carrying the house, nor to make necessary repairs. Thus the petitioner appears to have received what she seems to have desired — a "rent free" apartment for the rest of her life. Hence the master's conclusion that there was no consideration was unwarranted.

The master made further subsidiary findings, which we summarize. The idea for the conveyances of April 18, 1964, originated with the three children of Peter J. Corrigan who were not joint tenants in the property because they

wanted their names "on the house." This was discussed among the parties in February, 1964. A Mr. Donadio, who had long been Peter J. Corrigan's attorney, was asked to draw the necessary deeds. The children represented the transaction to Delia as fulfilling their father's desires. The petitioner expressed concern that she would be put out of the house, but the respondents assured her that she would not be. Elizabeth "importuned" the petitioner to make the conveyance, and "the four respondent children . . . influenced Delia" to do so. The transaction was not hurried. The deed was executed at the petitioner's home, where "Mr. Donadio was the only lawyer present." He explained the transaction to the petitioner, and told her that "in effect [it] meant . . . that she was receiving a flat for her use rent free for the rest of her life." While "Mr. Donadio did not tell Delia what the joint tenancy was worth compared to this so-called life estate," he thought she understood the transaction. She was worried about being put out of the house and he reassured her on this point. At some point, the petitioner mentioned getting her own lawyer. While the respondents did not try to dissuade her, they did ask her, "Why do you need a lawyer?" Delia was as "money conscious" as the other members of the family. After Peter's death she was able to locate a cash reserve in the attic, and twice visited the safe deposit box which she and her husband had held jointly. At the time of the conveyance in April, she was not in a state of shock, "[n]or was she grieving excessively." Her "general lack of confidence . . . was contributed to unwittingly by the respondents, some of whom to say the least were aggressive." Mr. Donadio did not act improperly in representing all five of the parties at the time of the conveyance. "He was led to believe from what they told him that they were all in agreement and . . . Delia contributed to this also."

The master concluded that "Delia M. Corrigan did not understand the transaction . . ." and that "it would have been beyond . . . [her] capacity . . . on April 18, 1964 to understand a complicated real estate transaction such as

took place." He further concluded that she was "over-reached" and should be restored to her prior position.

We are of opinion that these inferences of the master are not supported by his subsidiary findings and the evidence which he summarized in his supplemental report. There were no misrepresentations justifying a finding of fraud, nor was there sufficient evidence to show undue influence. Undue influence means "whatever destroys free agency and constrains the person whose act is under review to do that which is contrary to his own untrammelled desire." *Mirick* v. *Phelps*, 297 Mass. 250, 252. Here, it may be that the four respondents attempted to "influence" the petitioner, and they may "unwittingly" have contributed to her unease. But it is far from apparent that they overcame her will, or prevailed upon her to do anything which was in fact against her will. The parties do not dispute that the petitioner's overriding motive was to ensure her occupancy of the house during her lifetime. She seems to have feared eviction, and this fear may have been exaggerated. But it was not totally without foundation, and she appears to have pursued a rational course to protect herself against that eventuality. It was not necessary that she understand all of the effects of the joint tenancy which she held previously, or all of the effects of her deed. *Taylor* v. *Buttrick*, 165 Mass. 547. *Young* v. *Paquette*, 341 Mass. 67, 75. It was enough that she had a grasp of the essentials of the transaction so far as they affected her paramount concern. There are no subsidiary findings to suggest that she lacked such understanding. We agree with the judge that the conveyance should not be set aside.

In view of what we have said above, we need not consider the appeal of Elizabeth A. O'Brien.

*Interlocutory and final decrees affirmed.*