Hamlin, J.
This action is brought by Joan G. McB-eth, as attorney in fact for her mother Jean B. McBeth (“McBeth”), to recover ownership of her mother’s home at 1 Slayton Road, Melrose (the “home”) presently standing in the name of Gregory R.W. Gilman, Jean B. McBeth’s grandson and Joan G. McBeth’s nephew. Based upon the material and credible evidence and reasonable inferences drawn therefrom, I find the following facts:
FINDINGS OF FACT
1.The plaintiff Joan G. McBeth is a daughter of McBeth, both of whom presently reside at the home of Joan G. McBeth at 10 Clark Road, Ipswich, Massachusetts. Jean B. McBeth has another daughter Jean C. McBeth who resides at 1 Slayton Road.
2. The defendant, Gregory R.W. Gilman (“Gilman”), is the grandson of Jean B. McBeth and resides at 1 Slayton Road, Melrose, Massachusetts.
3. In approximately 1985, the defendant Gilman commenced living at the home of his grandmother McBeth at 1 Slayton Road and has continued to reside at 1 Slayton Road to the present time.
4. For the last several years, McBeth has experienced significant health problems, including fractures, dehydration, pneumonia and strokes requiring frequent long and short term admissions to hospitals and health care facilities.
5. McBeth is 94 years old, and in extremely poor physical health.
6. For many years prior to December 15, 1993, McBeth had owned and along with her now deceased husband lived in her home at 1 Slayton Road, Melrose, Massachusetts. Her family had been raised there and her home is obviously of great importance to her for both emotional and practical reasons.
7. During the last several years when McBeth experienced what the parties have agreed are “significant health problems” she lived at the home with and was dependent upon her daughter Jean C. McBeth, the defendant’s aunt, for all her physical needs. Also living at the home was the defendant Gilman[1] who performed various errands for his grandmother. The bulk of McBeth’s day-to-day care was furnished before December 15, 1993 by daughter Jean C. McBeth.
8. Her other daughter who is the plaintiff in this case, Joan G. McBeth was a full-time school teacher and had lived in the home until she moved to 10 Clark Road in Ipswich. The Ipswich residence was a summer cottage given to her by her parents. She has expended considerable funds to make the house habitable.
9. After December 15, 1993, McBeth has lived with and been cared for by her daughter Joan at 10 Clark Road in Ipswich with the exception of various in-patient stays at medical and nursing home facilities. Joan McBeth took a leave of absence to care for her mother.
10. On December 15, 1993, while McBeth was in the hospital in very poor and weakened health, both physically and mentally, Gilman persuaded her to sign a piece of paper conveying title in her home to Gilman. Her signature consisted of making an “X” as she was unable to sign her name.
11. At the time he took this action, Gilman knew that his grandmother’s medical, financial and legal affairs were, pursuant to her express wishes, to be handled by her two daughters Joan and Jean under a Power of Attorney (Exhibit 1) which she had executed on May 12, 1987, due to her age and increasingly poor health. McBeth wanted to provide for the time when and if she was unable to handle her affairs, due to weakened physical and/or mental problems. She therefore gave her daughters broad power and discre *443 tion under the Power of Attorney. They could “conduct litigation” concerning her estate and were given the express power to make decisions concerning her real property.
12. At the time Gilman had McBeth sign an “X” on the purported conveyance, he well knew his grandmother was in a very weakened state physically and mentally. He well knew she was particularly vulnerable to influence exerted over her by him concerning her property, and vulnerable due to her concern for him because of their familial and special relationship created by his living with her since 1985.
13. Gilman took care that his grandmother would be alone in her hospital room at night, and brought in his friends and a notary public to be present at the time he had his grandmother sign the paper giving him the house. McBeth did not know his friends and the notary.
14. He took care that Joan and Jean were not there and that they were unaware of his plan.
15. The hospital records and the testimony of McBeth’s nurse on December 15, 1993 indicate that she was in a highly weakened state, both mentally and physically, at the crucial time she signed the paper. I find that she was unable to understand or appreciate that she was deeding her home to her grandson Gil-man and that she never had any intention of deeding her home.
16. The videotape (Exhibit 4) orchestrated by Gil-man and his friends, although not on the same day, dramatically portrays both the condition of McBeth and the fact that Gilman misrepresented the true nature of the paper that he had his grandmother sign. He talked to her about his taking care of the house, not about giving him the house.
17.1 And that McBeth never intended to give Gilman the house and thought she was signing a paper to let him take care of it for her (manage the property) until she was better. She lacked any understanding of the essentials of what transpired in her hospital room on December 15, 1993. Her intention at all times has and remains today to have all her heirs, children and grandchildren inherit her home when she dies.
18. Gilman overcame her will and unduly influenced her when he had her “X’ the paper.
19. Further, he misrepresented the situation by making her believe she might lose her house if she did not sign allowing him to take care of it.
20. I find that his intent was to trick his grandmother and misrepresent to her that the state would take her home and that he could protect her home for herself and her heirs. His statement “there’s no fool like an old fool,” which he made to his grandmother’s social worker about the circumstances involving these events indicates his fraudulent intent and state of mind.
21. McBeth is very anxious to have her house returned to her and at her direction and pursuant to her wishes her daughter Joan filed this lawsuit to carry out her mother’s wishes. Joan is acting in the best interests of her mother both individually and pursuant to the Power of Attorney.
22. By not joining in this lawsuit, which is clearly at the direction of and in the best interests of her mother, Jean C. McBeth has not acted as her mother desired pursuant to her mother’s individual wishes and the Power of Attorney.[2]
23. Her daughter Joan has standing to proceed as she has done.
DISCUSSION
Undue Influence
Where misrepresentations are made to justify a finding of fraud or sufficient evidence to show undue influence over a person under which that person conveyed their property, the court can set aside that conveyance. Corrigan v. O’Brian, 353 Mass. 341, 350 (1967). Undue influence means “whatever destroys free agency and constrains the person whose act is under review to do that which is contrary to his/her own untrammelled desire.” Corrigan, supra, citing Merick v. Phelps, 297 Mass. 250, 252 (1937).
Evidence that McBeth was in a weakened mental condition and that her resistance had been weakened are important factors in determining whether advantage was taken of [her] by undue influence. Brodie v. Evirs, 313 Mass. 741, 745 (1943) (evidence that the eighiy year old plaintiff suffered a bad heart attack the day he conveyed his property to defendant niece, that plaintiff feared his death was imminent, and that defendant niece failed to consult plaintiffs brother concerning the conveyance required finding that plaintiff was unduly influenced by a plan devised by defendant niece).
At the time McBeth conveyed her property to Gil-man, McBeth was in a very weakened physical and mental condition. She was isolated and alone in the hospital. Gilman purposefully approached McBeth late in the evening when she would be most vulnerable. It was then he pressured her into “X’ing the deed which conveyed her property over to him. In the course of his scheme, he told McBeth that she may lose her home if she did not sign the paper. Gilman misled McBeth into believing that she was merely signing a paper to let him take care of her property until she recovered. He orchestrated this conveyance behind the backs of McBeth’s daughters. These facts overwhelmingly reveal how McBeth’s will was overborne by Gilman’s plan. See Brodie, supra, at 745.
For these reasons, McBeth did not fully understand that she was deeding her home to Gilman. McBeth’s will was overcome when she signed the deed and therefore the Court rules in favor of McBeth under the claim of undue influence in Count I. Gilman’s actions *444 clearly destroyed McBeth’s “free agency and constrain[ed]” her to act in a way “which is contrary to her own untrammelled desire.” Corrigan, supra citing Merick v. Phelps, 27 Mass. 250, 252 (1937).
Fraud and Misrepresentation
If statements made were knowingly false, there is plainly a basis for recision. Bellefeuille v. Medierios, 335 Mass. 262, 265 (1957); Lang v. Giraudo, 311 Mass. 132, 138 (1942). Statements by Gilman were material in their bearing upon the desirability from the standpoint of McBeth when she conveyed away her property. Lang, supra, at 138. Gilman told McBeth it was necessary to sign the papers in order for him to care for her property or else she would lose it. He told her this falsehood because he knew that it was McBeth’s will to have all of her children and grandchildren inherit her home.
Gilman’s statements were knowingly false. The evidence amply justifies a finding that these statements were made to induce McBeth to convey her property and that McBeth relied on those statements when she signed the deed conveying her property to him. Lang, supra, at 138.
A court acting under general principles of equity jurisprudence has broad power to reform, rescind, or cancel written instruments including [deeds] on grounds such as fraud, mistake, accident or illegality. Beaton v. Land Court, 367 Mass. 385, 392 (1975); Brodie, supra, at 744.
For these reasons, the statements made by Gilman to McBeth concerning her property were material and induced McBeth to sign the deed conveying her property to Gilman. Therefore the Court rules in favor of McBeth concerning the claim of fraud and misrepresentation under Count II and the deed shall be set aside.
Lack of Consideration
Because this court has set aside the deed for reasons stated in on counts I and III of plaintiffs’ claims, this court need not address plaintiffs’ count II claim of lack of consideration.
Power of Attorney
Under Massachusetts law, a power of attorney creates traditional principal-agent relationships. I.R.S. v. Blais, 612 F.Supp. 700, 706 (D.C. Mass. 1985).[3] In the instant action, the written instrument by which McBeth gave power of attorney to her two daughters Joan G. McBeth and Jean C. McBeth is clear on its face. The instrument gave them broad power and discretion to handle McBeth’s affairs which included the power to “conduct litigation” concerning her estate. The instrument also gave them express power to make decisions concerning her real property.
Gilman alleges that McBeth’s daughters lack standing to file suit as attorney in fact pursuant to the written instrument. In the alternative, Gilman argues that both daughters must act jointly to sue as attorney in fact and for that reason the one daughter who did bring suit lacks standing. However, determining the legal effect of the written power is for the court. McQuade v. Springfield Safe Deposit & Trust Co., 333 Mass. 229, 233 (1955). In interpreting such power, the court should place itself in the position of the parties to the instrument and give its words their plain and ordinary meaning in light of the circumstances and in view of the subject matter of the instrument. McQuade, supra, at 233.
The facts make certain that McBeth wanted all her children and grandchildren to inherit the home. When Joan G. McBeth, one of McBeth’s daughters discovered what Gilman had done, Joan G. McBeth came before this court to uphold her mother’s wishes. She acted consistently in her role as McBeth’s power of attorney. McBeth’s other daughter, Jean C. McBeth chose not to join. Jean C. McBeth’s failure to act is contrary to her obligations required as McBeth’s power of attorney and her mother’s wishes and best interests. Jean C. McBeth’s failure to participate in this action does not negate Joan G. McBeth’s standing to bring suit.
Jean C. McBeth impliedly renunciated her power of attorney in this capacity by failing to act. 2A C.J.S., Agency §130 (1972). She abandoned the object of the agency by failing to take steps to see that McBeth’s wishes were honored.[4] McBeth’s intent remains unequivocal. She wants ownership of her home returned and she wants all her children and grandchildren to inherit the home. McBeth directed Joan G. McBeth to take the action to bring this suit and recover her property. See I.C.C. v. Holmes Transportation, Inc., 983 F.2d. 1122, 1129 (1st. Cir. 1993). Therefore, Joan G. McBeth has standing to sue both individually and as attorney in fact on behalf of McBeth.
ORDER
For the foregoing reasons, the purported deed is rescinded and the property at 1 Slayton Road, Melrose, Massachusetts is to be returned forthwith to Jean B. McBeth and/or her estate.

 While no expert testimony was presented it appeared undisputed that, while able to function, Gilman and Jean C. McBeth, the defendant’s aunt, both suffer from emotional problems.

The Court notes that Jean C. McBeth is presently living in the home with Gilman.

A power of attorney is an instrument in writing by which one person, as principal, appoints another as his/her agent and confers upon him the authority to perform certain specified kinds of acts on behalf of the principal. 3 Am. Jur.2d, Agency §23 (1986).

An agent’s express notice of renunciation is not essential where the principal knows or should know of an event from which an inference of renunciation would reasonably be drawn. 2A C.J.S., Agency §130 (1972).