Whitehead, J.
Plaintiff, David M. Galante (“David”) filed this action against his siblings to enforce his rights as a beneficiary of a revocable inter-vivos trust. In the Verified Substitute Complaint, David seeks: a declaration that two amendments to the trust are invalid (Count I); a declaration that the Margaret A. Galante Trust continue as originally drawn (Count II); a Trustee accounting (Count III); the removal of defendant Alberta L. Galante (“Alberta”) as Trustee of the Margaret A. Galante Trust (Count IV); damages in the form of back rent against defendant Cheryl Davis (“Cheryl”) (Count V); and damages against Alberta (Count VI).
David seeks summary judgment on Count I, Count II, Prayers A-C,[1] and as to liability on Count V. Alberta has filed a cross motion for partial summary judgment on Counts I, II, IV, V, and VI.
BACKGROUND
Margaret A. Galante (“Margaret”)[2] was the mother of all of the parties to this action. Margaret suffered from multiple sclerosis for most of her life. Due to her illness and her desire not to perform business functions, Margaret executed a Power of Attorney on May30,1985. This Power of Attorney permitted Alberta, her daughter, to act as attorney-in-fact for Margaret. It granted Alberta “lull power to manage, control, invest and reinvest all or any part of [Margaret’s] properiyf,] ... to make contracts or covenants in [Margaret’s] name[,]... and [to] do any and all acts necessary or proper to cany out the foregoing powers and in relation to all other matters in which [Margaret was] interested . . .” (Emphasis added.) The drafting attorney, Jane A. Trudeau (“Trudeau”), acknowledged the Power of Attorney on May 21, 1986.
On January 27, 1988, Margaret, acting in her own right, created the “Margaret Galante Trust,” a nominee trust of which she was the sole Trustee. By deed dated Februaiy 18,1988,[3] Margaret, again acting in her own right, conveyed her sole asset, her house, into this trust. The sole beneficiary of this trust was the “Margaret Galante Trust.”[4]
On February 18, 1988, Margaret and Alberta created the “Margaret A. Galante Trust,” a revocable inter-vivos trust and the intended beneficiary of the original “Margaret Galante Trust.” Margaret was named as the Grantor-Trustee of this new trust, and Alberta was named as a Trustee. Alberta also executed *325 the trust instrument in her capacity as attorney-in-fact for Margaret.[5]
Article II of the “Margaret A. Galante Trust” permitted the Grantor, Margaret, to revoke or amend the trust in whole or in part by an instrument in writing signed by the Grantor and delivered to the Trustee during the Grantor’s life. Article IV provided in relevant part:
DISPOSITION OF THE TRUST PROPERTY AFTER GRANTOR’S DEATH
After the Grantor’s death the Trustee shall hold and dispose of the Trust property as follows:
2.The Grantor’s son, DAVID M. GALANTE, shall have the right to live in the Grantor’s principal residence located at 3 Townsend Street, Woburn. The Trustee shall retain that residence so long as David is living and shall desire to occupy said residential real property. If David does occupy such residence, he shall be able to do so without payment of rent and shall generally manage, care for and protect it, and shall pay all of the real property taxes, assessments, insurance and expenses of repair. In the event that David does not wish to use said residence or is not able to occupy it and when he in his sole discretion shall decide that the property is to be sold, then the property is to be sold and the proceeds distributed as follows:
(a) The Grantor’s son, Louis M. Galante, Jr., is to receive the sum of five Thousand ($5,000) Dollars;
(b) The Grantor’s daughter, Cheryl A. Johnson is to receive the sum of Twenty Thousand ($20,000) Dollars;
(c) The Grantor’s daughter, Alberta L. Galante is to receive the sum of Twenty Thousand ($20,000) Dollars;
(d) The Grantor’s son David M. Galante, is to receive the rest and remainder of the proceeds of the sale of the home after payment of the expenses related to such sale. In the event that David should die while occupying the property, then the property is to be distributed to the Grantor’s daughters, Cheryl A. Johnson and Alberta L. Galante, in equal shares, per stirpes.
In October 1988, Margaret was diagnosed with cancer of the uterus and underwent radiation therapy. Cheryl moved in with Margaret so that she could care for her. David was still living at 3 Townsend Street when Cheryl moved in.
On October 25, 1988, Alberta, as attomey-in-fact for Margaret, executed a First Amendment to the inter-vivos trust (ultimately denominated the “Margaret A. Galante Trust”). This amendment revised Article IV of the trust to permit Cheryl to live with David at 3 Townsend Street until she could afford a place of her own. Alberta executed the First Amendment on her own behalf as Trustee,[6] and on Margaret’s behalf under the Power of Attorney. Trudeau acknowledged this amendment.
On March 30, 1989, Alberta executed a Second Amendment to the inter-vivos trust.[7] Trudeau also acknowledged this amendment. The Second Amendment rewrote Article IV as follows:
2. The Grantor’s principal residence located at 3 Townsend Street, Woburn, Massachusetts is to be sold within four years of the Grantor’s death and the proceeds distributed according to paragraph 4 hereinbelow, provided however, that during the period between the Grantor’s death and such sale, the Grantors; [sic] daughters, CHERYL GALANTE JOHNSON and ALBERTA L. GALANTE, shall have the right to occupy said residence. During this interim period, they shall be able to occupy such residence without payment of rent and shall generally manage, care for and protect it and shall pay all of the real property taxes, assessments, insurance and expenses of normal repairs.
3. In the event that any one of the Grantor’s children desires to purchase said real property [sic], then they shall have the right to purchase the property at fair market value, as determined by a qualified real estate appraiser acceptable to all of the Grantor’s children. In [sic] any one of the Grantor’s children is not satisfied with the fair market value of the properly designated by the appraiser, he/she may hire at his/her expense a second qualified appraiser who shall also determine a fair market value for the property. The designated fair market value shall then be the average of the two values determined [sic] by said appraisers.
4. Upon the sale of said residence the proceeds from the sale are to be distributed as follows:
A. The Grantor’s son, LOUIS M. GALANTE, JR., is to receive the sum of Five Thousand Dollars ($5,000);
B. The Grantor’s son, DAVID M. GALANTE, is to receive the sum of Thirty-five Thousand Dollars ($35,000);
C. The Grantor’s daughters, ALBERTA L. GALANTE and CHERYL GALANTE JOHNSON, are to receive the rest and remainder of the proceeds of the sale of the home after payment of the expenses related to such sale, per capita.
Margaret executed her will on May 9, 1989, in the presence of six other people, including Trudeau. At that time, Margaret instructed Trudeau to further amend the Second Amendment to the inter-vivos trust. By this amendment, Margaret added the following handwritten language to Article IV (4)(C): “and any out of pocket expenses advanced by either of my children, Alberta and Cheiyl, during the Grantor’s lifetime which have not[8] been reimbursed." Alberta initialed this further amendment on behalf of Margaret.
Margaret died in July 1990. Pursuant to the terms of Article IV of the inter-vivos trust, as amended, *326 Cheryl remained on the property. Alberta has not lived at 3 Townsend Street since 1979.
DISCUSSION
I.Legal Standard
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass. R. Civ. P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving parly is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. See Dawes, supra at 553.
II.Compliance With Trust Amendment Provisions
David’s first argument is that there has not been compliance with the trust provisions regarding amendments to the trust, and that the amendments are therefore invalid. He alleges that the lack of a trust provision expressly allowing amendment by an individual acting under a Power of Attorney for Margaret precludes such amendment. David claims that if Margaret had intended to permit amendments via the Power of Attorney, which was extant when she created the inter-vivos trust, she should have expressly done so. David also contends that if Margaret was physically able to sign or mark the amendments, she was required to do so. Finally, David alleges that the form of the amendments does not comply with the terms of the trust because Alberta executed the amendments as “Grantor-Trustee” when she was only a Trustee. These arguments are unpersuasive.
First, the lack of a trust provision expressly allowing amendment by an individual acting under a Power of Attorney for Margaret does not preclude such an amendment. Article II of the inter-vivos trust unequivocally permitted the Grantor to amend the trust via a signed writing delivered to the Trustee during the Grantor’s life. Article II placed no further restrictions on the power to amend. In amending the inter-vivos trust under the Power of Attorney, Alberta was the legal equivalent of Margaret — the Grantor. There was thus no violation of the amendment provision of Article II. There is no basis for equating the trust instrument’s silence with an implicit rejection of a legally viable method of amendment executed ■within the parameters set by Article II. The Court must construe Article II based on what it says rather than on what it does not say.
Second, the inter-vivos trust does not require that an amendment be personally signed by the Grantor. Generally, when a legal document provides for written action by an individual, there is no implied requirement that the actor must do so physically, i.e., by his or her own hand. There is no reason to assume the existence of such a requirement in this case. Indeed, at oral argument, counsel for David conceded that, in his view, if the Power of Attorney specifically included the power to amend the trust, then the holder of that Power of Attorney could have acted as the Grantor in doing so. Thus, if the Power of Attorney authorized Alberta’s action, it was valid.
Finally, the fact that Alberta executed the amendments as “Grantor-Trustee” is of no consequence. In acting as attorney-in-fact for Margaret, Alberta was the legal equivalent of Margaret, and hence, the “Grantor-Trustee.” See Section III, infra.
III.Trust Amendment Under Power of Attorney
David’s second argument is that the Power of Attorney grants no authority to amend a trust. He contends that because the inter-vivos trust was not in existence when the Power of Attorney was created, it cannot be inferred that Margaret intended the Power of Attorney to grant authority to amend a non-existent trust. He claims that the language of the Power of Attorney by which Margaret expressed a desire not to perform “certain business functions” limits the power to those functions expressly mentioned therein.
The Court disagrees. The determination of the legal effect of a power of attorney is a matter of law for the court. McQuade v. Springfield Safe Deposit & Trust Co., 333 Mass. 229, 233 (1955). Notwithstanding the statement of Margaret’s desire not to perform “certain business functions,” some of which are enumerated, the remaining language of the Power of Attorney is broad enough to encompass amending a trust. By the Power of Attorney, Margaret expressly gave Alberta “full power to manage, control, ... all or any part of [her] property, real and personal . . . [and] to make any contracts or covenants in [her] name.” Margaret also gave Alberta the power to “do any and all acts necessary and proper to carry out the foregoing powers and in relation to cdl other matters in which I may be interested ...” (Emphasis added.) In amending the trust pursuant to the Power of Attorney, Alberta acted for, and stood in the shoes of, Margaret; David does not contend that Margaret was without power to amend the trust.
While it is true that powers of attorney are strictly construed, the rule of strict construction “does not go to the extent of destroying the purpose of the power.” Id. To adopt David’s position would be, in effect, to rewrite the explicit general grant of authority out of the Power of Attorney.
IV.Violation of Fiduciary Duty
David’s third argument in favor of voiding the amendments is that Alberta’s powers and duties under the Power of Attorney conflicted with her powers and duties as a Trustee of the inter-vivos trust. He claims that in amending the inter-vivos trust under the Power of Attorney, Alberta, as a Trustee, violated *327 her fiduciary duties to David, as a beneficiary. This is particularly so, David alleges, where the second amendment benefits Alberta personally.
In opposition, Alberta alleges that she executed the amendments to the inter-vivos trust in her capacity as attorney-in-fact for Margaret, and not in her capacity as a Trustee of the Margaret A. Galante Trust. She thus claims that she did not violate any duty owed to David as a beneficiary of the inter-vivos trust. This argument has merit.
Contrary to David’s allegation, Alberta’s respective roles as attorney-in-fact and as a Trustee do not inherently conflict. These titles each embody distinct powers and duties.
As attorney-in-fact for Margaret, Alberta was bound to act in Margaret’s best interests. As discussed above, her power included the power to amend the trust. There is no evidence that Alberta acted contrary to Margaret’s interest in altering the trust instrument to redistribute the income which she and her siblings would receive. Moreover, only Margaret or her successor would have standing to make such a contention.
In contrast, as Trustee, Alberta was bound to ensure that the beneficiaries received their respective dispositions under the trust as the trust existed at any given point in time. See generally 2A Scott and Fratcher, The Law of Trusts, §170 (4th ed. 1987). In this role, Alberta had no authority to alter those dispositions, nor did she do so. See Fine v. Cohen, 35 Mass.App.Ct. 610, 617 (1993), rev. denied, 416 Mass. 1110 (1994) (“Even when there are broad discretionary powers, a trustee may not exercise his or her discretion so as to shift beneficial interests in the trust”). While Alberta may benefit as a beneficiary from actions which she took as attorney-in-fact for Margaret, this fact is not prima facie evidence that she violated her fiduciary duties in her capacity as a Trustee of the Margaret A. Galante Trust. Moreover, it is not insignificant that when Margaret executed her will, she instructed Trudeau to further amend the Second Amendment to the inter-vivos trust — a tacit recognition and acceptance of that amendment.
V. Incapacity
David’s final argument is that Margaret’s physical disability constituted an “incapacity” within the meaning of Article II of the inter-vivos trust, rendering it irrevocable prior to her death. Article II provided in relevant part: “After the death or incapacity of the Grantor, this Trust shall become irrevocable until termination according to its terms.”
Based, among other things, on the use of the term “incapacity” elsewhere in the trust instrument, this argument must fail. For example, Article III, which governs the disposition of income and principal during the Grantor’s life, grants the Trustee the power to pay over income and principal of the Trust to or for the Grantor, except during periods of the Grantor’s incapacity. See Article 111(A). Article III(B), in relevant part, then defines incapacity as:
[a] duly executed, witnessed, and acknowledged written certificate of a licensed physician, certifying that such physician has examined the Grantor or a beneficiary and has concluded that, by reason of accident, physical or mental illness, progressive or intermittent physical or mental deterioration, or other similar cause, the Grantor or beneficiary had, at the date thereof, become incapacitated to act rationally and prudently in her own financial best interests . . .
The above language suggests that the concept of incapacity of the Grantor, as referenced in the Trust instrument, was limited to mental incapacity. Moreover, this construction is generally consistent with the ordinary legal usage of the term incapacity.
David asserts that part of Margaret’s estate planning goals included ensuring her continuing eligibility for Medicaid assistance. He claims that if Margaret retained the right to invade the trust, then under the applicable Medicaid regulations, the trust assets would have to be exhausted before Margaret would be eligible to receive Medicaid. David thus contends that it was “extremely important at the time the trust was created that the trust be made irrevocable prior to Mother entering a nursing home or other health care facility for which no ordinary health insurance benefits would be available.” (Emphasis in original.)
This argument must also fail. First and foremost, Article II of the inter-vivos trust expressly provided that it was revocable by the Grantor. Second, prior to April 1, 1990, assets transferred at less than fair-market value were exempt from the requirement that all available assets must be exhausted to pay for nursing facility services rendered to a person placed in a nursing home before that person can become eligible to receive Medicaid assistance. See 130 CMR §505.125(A)(2). Margaret placed her home in trust in February, 1988.
ORDER
For the foregoing reasons, it is hereby ORDERED that David M. Galante’s motion for partial summary judgment be DENIED, and that defendant Alberta L. Galante’s cross-motion for partial summary judgment on Counts I, II, IV, V,[9] and VI be ALLOWED.

In Prayer A, David seeks a declaration that the Margaret A. Galante Trust remains in effect as originally drafted. In Prayer B, he seeks a declaration that he is entitled to occupy the premises at 3 Townsend Street, Woburn, Massachusetts, pursuant to the original terms and conditions of the Margaret A. Galante Tmst. In Prayer C, David seeks a declaration that neither Cheryl, nor anyone claiming by or through her, has the right to occupy the premises.

Margaret A. Galante was also known as Alberta B. Galante.

On its face, the deed incorrectly listed “February 18, 1988" as the date of execution of the nominee trust. Trudeau corrected this error on July 20, 1990.

Although the “Margaret Galante Trust” was listed as the beneficiary, the intended beneficiary was the “Margaret A. *328 Galante Trust.” Trudeau also corrected this error on July 20, 1990.

The legal significance of this act, if any, is not in issue.

Alberta was neither required nor authorized to execute the amendment as Trustee; her signature was of no effect.

At the hearing of this matter, counsel for David conceded that the amendments were consistent with Margaret’s wishes for the purposes of David’s motion for partial summary judgment, but disputed that they were consistent with Margaret’s wishes for the purposes of Alberta’s motion. Aside from his allegation, however, counsel for David has not presented the Court with any evidence that the amendments were inconsistent with Margaret’s wishes. His unsupported allegation does not rise to the level of a factual dispute and is insufficient to overcome summary judgment. See Pederson v. Time, 404 Mass. 14, 17 (1989).

he Court notes that the photocopies of the Second Amendment in its possession are missing the word “not” in the handwritten addition. However, Trudeau avers that the word “not” was included in the original version.

While Count V seeks relief only against Cheryl, who has not moved for summary judgment, because the amendments to the inter-vivos trust were valid, the Court’s ruling effectively disposes of that Count as well.